**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| CHARLES FEICK, individually, derivatively on behalf of Nominal Defendant, THE GREEN HARVEST CORPORATION, | No. 54963-8-II (Consolidated with 55213-2-II) |
| Appellant, | |
| v. | |
| THE BRUTSCHE FAMILY REVOCABLE TRUST, THE ESTATE OF LEOPOLD CHANNING BRUTSCHE, MICHAEL BRUTSCHE, MARTHA CARR, CARLES CARR, CREATIVE SOLUTIONS EQUIPMENT, INC., | UNPUBLISHED OPINION |
| Respondents, | |
| and | |
| THE GREEN HARVEST CORPORATION, | |
| Nominal Defendant. | |

PRICE, J. — In a derivative suit brought on behalf of the Green Harvest Corporation, Charles Feick appeals the superior court's approval of a settlement agreement, appointment of a general receiver, denial of his motions to vacate and terminate the receivership, and denial of his motion for reconsideration. In response, the Brutsche Family Revocable Trust, the Estate of Leo Brutsche, and Michael Brutsche (collectively referred to as the Brutsches) bring a motion to dismiss Feick's appeal and request attorney fees. We deny the Brutsches' motion to dismiss and

request for attorney fees, but we also disagree with each of Feick's arguments and affirm the superior court.

FACTS

I. BACKGROUND

Green Harvest was a Washington corporation that held a cannabis producer and processor license. Charles Feick founded Green Harvest and sought out investors. In addition to being a shareholder, Feick served as the president and sole manager of Green Harvest.

The Brutsche Family Revocable Trust (Trust), through its trustee Leo Brutsche[1], became a shareholder in and loaned money to Green Harvest. The Trust also leased Green Harvest the property used for its operations.

Despite substantial investment and loans from shareholders, Green Harvest was not profitable, was accumulating debt, and was not making payments on its obligations. None of the shareholders had received any return on their investments or payments on their loans. Eventually, several shareholders became concerned with Feick's management of Green Harvest as he was continually requesting additional funds from shareholders and allegedly instructing vendors to seek payment directly from the Trust instead of Green Harvest.

---

[1] Since the commencement of this action, Leo Brutsche has died, and his interests now belong to the Estate of Leo Brutsche.

In 2017, due to these concerns, members of the board of directors, Leo Brutsche[2] and Martha Carr, removed Feick as president and installed Michael Brutsche in that role.[3] Michael stepped down as president after ten days, and then both Leo and Martha resigned from the board of directors.

In response to the directors' actions, Feick submitted complaints to the Washington State Liquor and Cannabis Board (WSLCB) as well as the attorney general and attempted to bring criminal charges against several of the shareholders. The Trust tried to resolve the conflicts between Feick and the shareholders through mediation, but Feick refused to participate. The Trust also repeatedly requested copies of Green Harvest's records and asked Feick to retain counsel for Green Harvest. Feick neither provided the records nor retained counsel.

In December 2018, Feick brought a derivative action pro se on behalf of Green Harvest against the Brutsches as well as against Martha Carr, Charles Carr, and Creative Solutions Equipment, Inc.[4] The same day, Feick sent an email to the parties saying, "This is now attrition and I will employ all my resources and legal networking to do all I can do to compell [sic] your clients to pay for their crimes against [Green Harvest] and its [s]hareholders." Clerk's Papers (CP) at 1010.

---

[2] Due to the fact that multiple individuals involved in this litigation share the same last name, certain persons are referred to using their first names. No disrespect is intended.

[3] Martha Carr was also a shareholder in Green Harvest. Michael Brutsche was Leo Brutsche's grandson and assisted him in managing the Trust.

[4] Charles Carr is Martha Carr's son. Feick has accused him of participating in stealing money from Green Harvest. Charles owns Creative Solutions Equipment, Inc., and it appears from the record that Green Harvest purchased equipment from them.

After realizing he could not represent Green Harvest pro se, Feick amended his complaint to include individual causes of action along with the derivative suit. He raised many claims including corporate looting and waste, embezzlement, and breach of fiduciary duty.

After Feick brought the action, Green Harvest defaulted on its lease agreement with the Trust. Additionally, Green Harvest had a tax lien pending against it and failed to retain insurance. The WSLCB also informed Feick that Green Harvest's cannabis license had expired due to a failure to pay the renewal fees and provide fingerprints.

The Trust again requested that Feick retain counsel for Green Harvest to assist in management and legal decision making and requested access Green Harvest's records. Feick again neither retained counsel nor permitted the Trust to access the records.

## II. APPOINTMENT OF GENERAL RECEIVER

About four months after Feick brought his lawsuit, the Trust filed a motion requesting the superior court appoint a general receiver over Green Harvest to liquidate Green Harvest's assets and dissolve it. The Trust argued that because of Green Harvest's failed financial status, dissolution was necessary and a receiver was required to protect and realize any remaining value. Based on the information available to the Trust, Green Harvest was being managed solely by Feick and there was no acting board of directors. The Trust further understood that a board of directors had not met in about two years. The Trust asserted that the majority of Green Harvest's shareholders favored appointment of a receiver. The shareholders believed that Feick posed a danger to the interests of Green Harvest and were concerned with the potential legal and financial risks he had incurred for Green Harvest as well as its shareholders.

4

Feick responded to the Trust's motion by agreeing that a receiver was necessary but arguing that the superior court should appoint a *custodial* receiver rather than a *general* receiver. He maintained the superior court should not appoint a general receiver unless Green Harvest's situation failed to improve such that "dissolution and liquidation of [Green Harvest's] assets appear[ed] to be the only reasonable course." CP at 22-23.

The superior court granted the Trust's motion and appointed Research Transition Consultants, LLC (Receiver) as the general receiver for Green Harvest.

III. SUBSEQUENT PROCEEDINGS

After its appointment, the Receiver found a potential buyer for Green Harvest's cannabis license. Because the cannabis license was tied to the Trust's real property, the Receiver believed that the value of the license would be greater if it could be offered with the property. The Receiver reached a settlement agreement with the Brutsches that allowed the Receiver to sell the rights to the cannabis license to the buyer while the Trust would simultaneously sell the property associated with those license to the buyer. The Receiver requested the superior court approve such a sale, and the request was granted. Feick did not object to the sale.

The sale of the cannabis license and the property was contingent on the superior court also approving the settlement agreement between Green Harvest and the Brutsches. The terms of the settlement agreement provided that Green Harvest's assets would be sold and the Receiver would dismiss the derivative claims brought on behalf of Green Harvest against the Brutsches. All remaining causes of action against Feick would be assigned to the Brutsches. In exchange, the Brutsches agreed to continue to allow Green Harvest's holdover tenancy and to sell the property

5

connected to the cannabis license. The Brutsches also agreed to release Green Harvest from indemnification and tenant payment obligations.

Feick opposed the motion to approve the settlement agreement, arguing that the Receiver failed to pursue debts owed to Green Harvest and the sale price for the cannabis license was too low. Feick also filed a motion to terminate the receivership and a motion to vacate the original receivership order.

In August 2020, the superior court considered both of Feick's motions together with the Receiver's motion to approve the settlement agreement. The superior court first denied Feick's motions to terminate and vacate the receivership. The superior court determined that when the Trust petitioned for a receivership, Green Harvest was not financially sound, had substantial debts, and the financial interests of its shareholders and creditors were in jeopardy. The superior court further found that there was no basis for exercising its discretionary authority to terminate the receivership because there had been no showing of misrepresentation, wrongdoing, bad faith, or other circumstances justifying termination. The superior court then approved the settlement agreement and dismissed all derivative claims asserted on behalf of Green Harvest against the Brutsches.

Feick filed a motion to reconsider pursuant to CR 59, arguing that the superior court erred in failing to assign an adjunct case number to Feick's action as required by RCW 7.60.160(2). Feick appeared to argue that because there was no adjunct case number assigned and no stay of proceedings, the Brutsches and the Receiver did not have standing to make certain arguments and the superior court did not have either standing or jurisdiction to make its decisions. The superior court denied Feick's motion to reconsider.

6

Feick filed a notice of discretionary review to this court, which we accepted as a notice of appeal. Feick seeks review of multiple orders related to the August 2020 hearing: (1) the order approving the settlement agreement, (2) the order denying his motions to vacate and terminate the general receivership, and (3) the order denying his motion for reconsideration. Feick also includes a request to review the initial order appointing the Receiver made in 2019 and raises additional arguments about various issues.

In addition to their substantive response, the Brutsches move to dismiss Feick's appeal, arguing that Feick's claims are untimely and frivolous.

ANALYSIS

I. BRUTSCHES' MOTION TO DISMISS

The Brutsches bring a motion to dismiss Feick's appeal of the initial 2019 order appointing the Receiver arguing that it is untimely and frivolous. We deny the motion to dismiss.

The Brutsches claim that arguments regarding the order appointing the Receiver cannot be raised on appeal here because that type of order is appealable as a matter of right. Because Feick failed to file his request for review until more than one year after the appointment of the Receiver, according to the Brutsches, his request is untimely. We reject this argument.

A party may, but need not, seek interlocutory review of an order appointing a receiver by filing a notice of discretionary review of that decision within 30 days after entry of the order. RAP 2.2 and 2.3. We then have discretion to grant interlocutory review or not after applying the standard established under RAP 2.3. Alternatively, a party may include an order appointing a receiver as an order designated for appeal when the party appeals as a matter of right after a final

judgment under RAP 2.2. *See* RAP 2.4. Feick chose the latter option, and his appeal of the order appointing the receiver was not untimely.

The Brutsches next broadly argue that we should dismiss all Feick's claims because they are frivolous. " '[A]n appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.' " *Green River Cmty. Coll. Dist. No. 10 v. Higher Educ. Pers. Bd.*, 107 Wn.2d 427, 442-43, 730 P.2d 653 (1986) (quoting *Streater v. White*, 26 Wn. App. 430, 434-35, 613 P.2d 187 (1980)). As discussed below, Feick's arguments are not totally devoid of merit. Therefore, we deny the motion to dismiss.

## II. APPOINTMENT OF GENERAL RECEIVER

Feick argues that the superior court erred in appointing a general receiver. We disagree.

### A. LEGAL PRINCIPLES

A "receiver" is "a person appointed by the court as the court's agent, and subject to the court's direction, to take possession of, manage, or dispose of property of a person." RCW 7.60.005(10). A receiver may be appointed "in any action involving any dispute with respect to the ownership or governance of [any public or private] entity[] or upon the application of a person having an interest in such an entity when the appointment is reasonably necessary to protect the property of the entity or its business or other interests." RCW 7.60.025(1)(u).

A receiver can be either a general receiver or a custodial receiver. RCW 7.60.015. "A receiver must be a general receiver if the receiver is appointed to take possession and control of all or substantially all of a person's property with authority to liquidate that property and, in the case of a business over which the receiver is appointed, wind up affairs." RCW 7.60.015.

8

A custodial receiver "is appointed to take charge of limited or specific property of a person or is not given authority to liquidate a property." RCW 7.60.015.

A superior court's decision to appoint a receiver is reviewed for an abuse of discretion. *Mony Life Ins. Co.*, 135 Wn. App. 948, 952, 148 P.3d 1065 (2006). "A [superior] court abuses its discretion when its decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " *Id.* at 952-53 (internal quotation marks omitted) (quoting *T.S. v. Boy Scouts of Am.*, 157 Wn.2d 416, 423, 138 P.3d 1053 (2006)).

B. APPLICATION

Feick argues that the superior court erred in granting the petition for a general receivership and that it should have instead appointed a custodial receiver.[5] He maintains that Green Harvest was in a good position and appointment of a general receiver was not necessary. We disagree.

Prior to appointing the Receiver, the superior court considered evidence that Green Harvest was insolvent, not being properly managed, defaulted on its lease, and at risk of losing its remaining assets. Evidence was presented that Green Harvest was seeking to avoid its obligations to its vendors by instructing them to seek payment from the Trust. Moreover, dissolution, a result favored by the majority of shareholders, required the appointment of a general receiver. A custodial receiver would not have had the authority to sell assets and dissolve Green Harvest. *See* RCW 7.60.015. Because there was evidence that a comprehensive management approach was

---

[5] Feick also argues that the superior court should not have created a receivership at all. However, because Feick actually argued for a custodial receivership below, that argument fails under the invited error doctrine. *See Angelo Prop. Co., LP v. Hafiz*, 167 Wn. App. 789, 823, 274 P.3d 1075 (2012).

necessary, including the possible dissolution of Green Harvest and liquidation of its assets, the superior court did not abuse its discretion in appointing a general receiver.

### III. MOTIONS TO VACATE & TERMINATE RECEIVERSHIP

Feick argues that the superior court erred in denying his motions to vacate and terminate the receivership. We disagree.

#### A. LEGAL PRINCIPLES

A receiver may be appointed by the superior court when dissolution of a private entity is sought if an appointment is requested by "a person having an interest in such an entity." RCW 7.60.025(u). The superior court also has the authority to terminate a receivership. RCW 7.60.290(5). We review a decision of whether to terminate a receivership for an abuse of discretion. *Bero v. Name Intelligence, Inc.*, 195 Wn. App. 170, 179, 381 P.3d 71 (2016).

#### B. APPLICATION

Feick appears to argue that the superior court erred in denying his motion to terminate and his motion to vacate the receivership under RCW 7.60.290(5) because the receivership was procured wrongfully or in bad faith. Regarding both motions, Feick claims that because the Trust and its trustee misrepresented themselves as parties of interest that could request a receivership, the superior court should have terminated and vacated the receivership. We disagree.

The Trust had an interest in Green Harvest because it was a shareholder, and the trustee had authority to act on behalf of the Trust. This interest in Green Harvest permitted the Trust, through its trustee, to initially request the receivership. Accordingly, we find that the superior court did not abuse its discretion by denying Feick's motions to terminate and vacate the receivership.

No. 54963-8-II
(Consol. with 55213-2-II)

IV. MOTION FOR RECONSIDERATION

Feick argues that the superior court should have granted his motion for reconsideration of the superior court's approval of the settlement and denial of his motions to vacate and terminate the receivership. Feick asserts that the superior court was divested of jurisdiction when it (1) failed to stay the case pursuant to RCW 7.60.110(1)(a)), and (2) failed to assign an adjunct case number (which Feick asserts is required under RCW 7.60.160(2)).[6] We disagree.

First, RCW 7.60.110(1)(a) provides that an order appointing a general receiver operates as a stay of "[t]he commencement or continuation . . . of a judicial, administrative, or other action or proceeding *against the person over whose property the receiver is appointed* that was or could have been commenced before the entry of the order of appointment, or to recover a claim against the person that arose before the entry of the appointment." (Emphasis added.) Such a stay automatically expires 60 days after the appointment of a receiver. RCW 7.60.110(2).

Feick does not provide authority to support his argument that a failure to issue a stay under this statute divested the superior court of jurisdiction. Assuming violating the statute could have this result, the superior court did in fact order a stay of proceedings under RCW 7.60.110 as part of its order appointing a receiver. Consistent with the statute, the stay expired after 60 days, making it largely inapplicable because Feick's complaints are rooted in actions occurring well outside this statutory period. Because the superior court's stay satisfied the requirements of the statute, Feick's argument fails.

---

[6] Feick also couches his arguments in terms of divestment of the superior court's "standing" to issue its orders. Appellant's Opening Br. at 26-28, 32-41. Feick, however, does not explain or provide authorities supporting his allegation of the superior court's lack of "standing." Therefore, we do not further address it. *See* RAP 10.3(a).

11

Feick's argument also fails because his application of the statute is overly broad. Feick appears to argue that the superior court should have stayed all proceedings indefinitely. However, in addition to only requiring a stay for 60 days, the statute only applies to actions in which the entity in receivership is a defendant (as in a proceeding "against the person over whose property the receiver is appointed"). RCW 7.60.110. Because the case below was originally postured as a shareholder derivative suit, Green Harvest is more properly aligned as a plaintiff. Green Harvest was listed as a nominal defendant in the action, but nothing on the record indicates that Green Harvest has substantively acted as a defendant. In fact, Green Harvest entered into a settlement agreement as a plaintiff with the defendants. Because the statute does not apply as urged by Feick, the superior court's failure to order a stay could not have affected its jurisdiction.

Second, relying on RCW 7.60.160(2), Feick also argues the superior court was divested of jurisdiction because it failed to assign an adjunct case number. The statute provides:

> Litigation by or against a receiver is adjunct to the receivership case. The clerk of the court shall assign a cause number that reflects the relationship of any litigation to the receivership case. All pleadings in adjunct litigation shall include the cause number of the receivership case as well as the adjunct litigation number assigned by the clerk of the court. All adjunct litigation shall be referred to the judge, if any, assigned to the receivership case.

RCW 7.60.160(2).

On its face, the provision requires the superior court to assign an adjunct case number to litigation "by or against a receiver." RCW 7.60.160(2). The statute ensures that litigation involving a receiver remains separate from the case in which a receiver is actually appointed. RCW 7.60.160(2). It applies only to situations where a receiver is an actual party to the litigation, either as a plaintiff or a defendant. RCW 7.60.160(2).

12

Here, again, Feick provides no support for his argument that the superior court's jurisdiction is affected by violating this statute. But even if that is the result, like the stay provision discussed above, the statute does not apply in this case. Although the Receiver was appointed as part of this action, there is no litigation by or against the Receiver at issue. The Receiver is neither a plaintiff nor a defendant in this action. Because the Receiver is not a party to this action, the superior court was not required to assign an adjunct case number.

Since the statutory provisions for stays and adjunct case numbers in receiverships do not apply, we find that the superior court did not err in denying Feick's motion for reconsideration.

## V.  ADDITIONAL ARGUMENTS

Feick makes several additional arguments that are not adequately supported to permit our review. For example, Feick argues that the superior court erred in finding that the Trust had standing "to file a legal action representing [Green Harvest] as a true party of interest." Opening Br. at 39. Feick's arguments in support of this contention are muddled, and he fails to point to facts in the record that support this contention. Therefore, we decline to address this issue. *See* RAP 10.3(a).

Feick also appears to argue that the superior court erred in approving the settlement agreement because the sale price for the cannabis license was too low, even though he failed to object to the approval of the sale below. Feick offers no legal citations to support addressing his unpreserved argument. Therefore, we decline to address it. *See* RAP 10.3(a).

Feick next argues that the superior court erred in permitting the Trust and Bill Stewart[7] to supposedly act as "co-receivers" along with the Receiver for Green Harvest. Feick fails to point to facts in the record that support his contention that they were acting as co-receivers for the Green Harvest. Therefore, we decline to address this argument. *See* RAP 10.3(a).

Finally beyond his arguments against the motion for reconsideration, Feick persists in his global position about "adjunct case numbers" to argue that all the superior court rulings "on receivership, the settlement and the real estate owned by the Trust" should be vacated for a lack of standing and jurisdiction. Opening Br. at 26. Again, Feick provides no authority indicating this would be the result from an "adjunct case number" violation but, as explained above, because this case did not involve litigation by or against the Receiver, the statute requiring adjunct case numbers does not apply.

## VI. ATTORNEY FEES & SANCTIONS

The Brutsches request that we impose sanctions and award attorney fees pursuant to RAP 18.9 because Feick's appeal was frivolous. Martha Carr, in her joinder of the Brutsches' motion to dismiss, also requests that she be awarded her attorney fees under RAP 18.9.[8] We deny the respondents' requests.

---

[7] Bill Stewart is Martha Carr's attorney.

[8] Charles Carr also requests his attorney fees on appeal. However, because he fails to properly devote a section of his brief to this request, we do not address it. RAP 18.1(b). *See Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012) ("Argument and citation to authority are required under the rule to advise the court of the appropriate grounds for an award of attorney fees and costs.").

Sanctions and attorney fees may be imposed under RAP 18.9(a) where we find that an appeal is frivolous. RAP 18.9(a). " '[A]n appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.' " *Green River Cmty. Coll. Dist. No. 10*, 107 Wn.2d at 442-43 (quoting *Streater*, 26 Wn. App. at 434-35).

Although Feick's arguments on appeal are weak and baseless at points, they are not so totally devoid of merit that there was no reasonable possibility of reversal. Therefore, we deny the respondents' requests for attorney fees and sanctions.

### CONCLUSION

In conclusion, we deny the Brutsches' motion to dismiss and affirm the superior court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

GLASGOW, A.C.J.

WORSWICK, J.

15