[No. 24037-1-III.   Division Three.   November 14, 2006.]

MONY LIFE INSURANCE COMPANY, *Plaintiff*, v. CISSNE FAMILY, L.L.C., ET AL., *Defendants*, CHS, INC., ET AL., *Respondents*, CISSTAR, L.L.C., *Petitioner*.

---

*Bryce J. Wilcox* and *Michael D. Franklin*, for petitioner.
*Michael R. Tabler*, for respondents.

¶1 BROWN, J. — Fin-Ag, Inc., a wholly owned subsidiary of CHS, Inc., loaned money to Cisstar, L.L.C.,[1] with Cisstar partly pledging its silage inventory as collateral. For still disputed reasons, Grayhawk Farms, L.L.C., assumed Cisstar's contract with National Foods to buy product for silage. Fin-Ag notified Grayhawk's buyers of its security interest. When named as a codefendant in this litigation, Fin-Ag, naming Grayhawk, successfully requested the appointment of a receiver for the silage over Grayhawk's nonparty objection. Further, the court approved the receiver's compensation over Grayhawk's objection. Our commissioner decided Grayhawk was an aggrieved party under RAP 3.1 when Grayhawk sought discretionary review. Because the trial court did not abuse its discretion in appointing or compensating the receiver, we affirm and leave

---

[1] There are 14 other parties who are not participating in this appeal: Fresh Pak, L.L.C.; Olympic Produce, Inc.; Terry Cissne; Lora L. Cissne; Riley J. Cissne; Cissne Family, L.L.C.; Shannon McKay; Brigitte M. Miller; Richard R. Miller; Deere & Company; Cisstar, L.L.C.; Tater Time Potato Co., L.L.C.; Washington Mutual Bank; and MONY Life Insurance Co.

the trial court to consider the competing claims to the receivership funds.

## FACTS

¶2 Fin-Ag loaned money to Cisstar partly in exchange for a security interest in Cisstar's silage inventory. Fin-Ag filed financing statements with the State.

¶3 Cisstar purchased vegetable waste from National Foods to convert to silage. It then sold silage to feedlots and dairies. Facing financial difficulties, Cisstar asked National to change the name of the buyer on the parties' contract to Grayhawk, so Cisstar could "stay out of trouble." Clerk's Papers (CP) at 175. Cisstar then asked its customers to make payments to Grayhawk instead of Cisstar.

¶4 Fin-Ag discovered the contract change and sent notices to Cisstar's customers, informing them of Fin-Ag's security interest and instructing them to include Fin-Ag as payee on their payment checks. Later, Fin-Ag was named a codefendant in this suit and applied as third party plaintiff for appointment of a receiver over Cisstar's silage inventory, naming Grayhawk. Cisstar did not respond. Grayhawk, as a nonparty, filed its opposition to Fin-Ag's application.

¶5 The court granted Fin-Ag's receivership application, authorizing the receiver "to possess, preserve, control, operate, and liquidate all silage inventory and silage proceeds owned by Third Party Defendant, Cisstar, LLC ('Cisstar') including silage inventory sold under the name 'Grayhawk Farms, LLC' and all proceeds therefrom." CP at 97. Later, the court approved payment of $19,120.70 to the appointed receiver. Grayhawk successfully petitioned for discretionary review over Fin-Ag's opposition.

## ANALYSIS

### A. Receivership Proper

¶6 The issue is whether the trial court erred by abusing its discretion in appointing a receiver over the silage inventory.

¶7 Grayhawk first contends the trial court's order was erroneous without findings of fact and conclusions of law. But the appointment of a receiver does not require findings of fact and conclusions of law. *See Clebanck v. Neely*, 163 Wash. 333, 335, 1 P.2d 239 (1931) (in equity, no findings of fact and conclusions of law are required).

¶8 Grayhawk next contends the court erred in appointing a receiver over silage sold under the Grayhawk name because Grayhawk was a distinct company from Cisstar. Fin-Ag responds that Grayhawk lacks standing to appeal; the appeal is not ripe because Grayhawk's ownership remains undetermined, and the issues are moot since the silage has been reduced to a fund controlled by the court.

¶9 First, our commissioner decided Grayhawk was an aggrieved party within the meaning of RAP 3.1. Second, Grayhawk's undetermined interest in the silage does not affect the ripeness of the appeal because the issue is the appointment of the receiver, not the parties' interest in the silage inventory. This leaves the mootness issue.

¶10 Generally, we will dismiss an appeal if the issues are moot. *Sorenson v. City of Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972). Fin-Ag argues since the inventory is liquidated and the receiver is about to be discharged, Grayhawk has no remedy. An appeal without a remedy is moot. *In re Det. of V.B.*, 104 Wn. App. 953, 959, 19 P.3d 1062 (2001) (When a court cannot fashion a remedy that will directly affect the appellant, the case is moot.). But the receiver statute, chapter 7.60 RCW, permits reimbursement of fees and sanctions if a court determines the appointment of a receiver is "wrongfully procured or procured in bad faith." RCW 7.60.290(5). RCW 7.60.290(5) provides a possible remedy. Thus, Grayhawk's appeal is not moot.

¶11 The power to appoint a receiver is discretionary. *King County Dep't of Cmty. & Human Servs. v. Nw. Defenders Ass'n*, 118 Wn. App. 117, 121, 75 P.3d 583 (2003). A trial court abuses its discretion when its decision is " 'manifestly unreasonable, or exercised on untenable grounds, or for

untenable reasons.' " *T.S. v. Boy Scouts of Am.*, 157 Wn.2d 416, 423, 138 P.3d 1053 (2006) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

▪ ¶12 A receiver is "a person appointed by the court as the court's agent, and subject to the court's direction, to take possession of, manage, or dispose of property of a person." RCW 7.60.005(10). A receiver may be appointed by the court if the court determines "the appointment of a receiver is reasonably necessary and that other available remedies either are not available or are inadequate." RCW 7.60.025(1).

¶13 Reasons for appointing a receiver include:

(a) On application of any party, when the party is determined to have a probable right to or interest in property that is a subject of the action and in the possession of an adverse party, or when the property or its revenue-producing potential is in danger of being lost or materially injured or impaired. . . .

(b) Provisionally, during the pendency of any action to foreclose upon any lien against or for forfeiture of any interest in real or personal property, or after notice of a trustee's sale has been given under RCW 61.24.040, or after notice of forfeiture has been given under RCW 61.30.040, on application of any person, when the interest in the property that is the subject of foreclosure or forfeiture of the person seeking the receiver's appointment is determined to be probable and either:

(i) The property or its revenue-producing potential is in danger of being lost or materially injured or impaired; or

(ii) The appointment of a receiver with respect to the real or personal property that is the subject of the action, the notice of trustee's sale or notice of forfeiture is provided for by agreement or is reasonably necessary to effectuate or enforce an assignment of rents or other revenues from the property;

. . . .

(nn) In such other cases as may be provided for by law, or when, in the discretion of the court, it may be necessary to secure ample justice to the parties.

RCW 7.60.025(1).

¶14 Here, Fin-Ag had a perfected security interest in Cisstar's silage inventory. Grayhawk was then created under disputed circumstances to sell Cisstar's silage and accept payment in Grayhawk's name, in apparent opposition to Fin-Ag's secured interests. Other remedies such as a lawsuit against Grayhawk would have been inadequate given the immediate danger of the silage being sold off. Thus, the trial court had tenable reasons for appointing a receiver. Accordingly, the trial court did not abuse its discretion when appointing the receiver. Moreover, the silage was combined in one pit, threatening Fin-Ag's security interest. Because this review is interlocutory, the trial court can decide the competing interests suggested by the parties here.

## B. Receiver Properly Compensated

¶15 The next issue is whether the receiver's $19,120.70 payment was reasonable.

¶16 Without authority, Grayhawk contends the receiver's payment should be reversed because of inadequate documentation. Generally, we will not consider arguments without supporting legal authority. RAP 10.3(a)(5). Even so, RCW 7.60.180(4) permits a receiver to file an itemized billing statement with the court indicating both the time spent, billing rates of the receiver's work to be compensated, and a detailed list of expenses. When the court has approved and fixed the receiver's compensation and the amount "appears to be reasonable," we will not interfere with the lower court's exercise of discretion. *Steele v. Puget Sound Realty Assocs.*, 199 Wash. 128, 133, 90 P.2d 721 (1939).

¶17 Here, the receiver supported his request for payment with three declarations, setting forth the work performed and expenses incurred. The receiver kept a detailed record of meetings, phone calls, and mileage. The receiver explained his hourly rate was the usual and customary rate based on his 35 years of experience and his familiarity with rates charged by other receivers. This evidence provided

the court with a tenable basis to grant the receiver's application for payment. Given all, $19,120.70 was reasonable.

## C. Attorney Fees Unwarranted

¶18 Grayhawk requests attorney fees under RAP 18.1 and RCW 7.60.290(5). Given our analysis, no basis exists to support Grayhawk's request for fees and it is denied.

¶19 Affirmed.

SWEENEY, C.J., and SCHULTHEIS, J., concur.