**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In re the Matter of the Dissolution of:<br><br>APOGEE CAPITAL LLC, a Washington limited liability company. | No. 55882-3-II<br><br>ORDER GRANTING MOTION FOR RECONSIDERATION IN PART AND AMENDING OPINION |

Appellant, Scott Edwards, moves this court to reconsider its July 19, 2022 opinion. At the direction of this court, Respondent, Cynthia A. Edwards responded to Appellant's motion. After consideration, we grant Appellant's motion for reconsideration in part. We amend the July 19, 2022 opinion as follows:

Sentence two in the first full paragraph of page 21 that reads, "Scott does not dispute that he sold Apogee's properties to LLCs that he owns for less than their fair market value." is deleted and replaced with the following sentence: "The parties dispute whether the properties were sold at fair market value."

We deny the remainder of Edwards' motion.

It is SO ORDERED.

Panel: Jj. Worswick, Lee, Veljacic.

FOR THE COURT:

_____
Veljacic, J.

We concur:

_____
Worswick, P.J.

_____
Lee, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In re the Matter of the Dissolution of:

APOGEE CAPITAL LLC, a Washington
limited liability company.

No. 55882-3-II

UNPUBLISHED OPINION

VELJACIC, J. — Scott J. Edwards appeals the superior court's order granting Cynthia A. Edwards's petition to dissolve Apogee Capital, LLC (Apogee) and to appoint a general receiver.[1] Scott argues that the superior court erred by declining to enforce the arbitration clause in Apogee's operating agreement. Scott also argues that the superior court abused its discretion by granting Cynthia's petition to (1) judicially dissolve Apogee under RCW 25.15.274 and (2) appoint a general receiver under RCW 7.60.025. Both parties request their costs on appeal under RAP 14.2.

We hold that the arbitration clause in Apogee's operating agreement does not encompass the issue of dissolution or receivership. We also hold that the superior court did not abuse its discretion by granting Cynthia's petition for dissolution and the appointment of a general receiver. Therefore, we award Cynthia's costs on appeal because she is the substantially prevailing party on review. Accordingly, we affirm the superior court's order granting Cynthia's petition for dissolution and the appointment of a general receiver.

---

[1] Because the members of Apogee all share the same last name, we use first names for clarity. No disrespect is intended.

FACTS

I.   BACKGROUND

In December 2008, William Edwards formed Apogee as a manager-managed limited liability company for the purpose of holding and developing real estate.  The marital community of William and Joyce Edwards originally held interest in Apogee as its sole member.  In December 2012, Apogee's members executed a restated operating agreement.  Scott was appointed as the sole manager.

In February 2015, William passed away, leaving his property to the Bill and Joyce Edwards Living Trust.  In July 2015, the Bill and Joyce Edwards Living Trust distributed its sole membership interest in Apogee to William's three children—Scott, Cynthia, and Jeffery Edwards—in equal units.[2]

In April 2016, Apogee's members agreed to buy out Jeffery's interest pursuant to the method provided in the operating agreement.  This resulted in Scott and Cynthia each holding an undivided one-half (50 percent) interest in Apogee.

II.   EVENTS LEADING TO THE PETITION

In August 2017, Cynthia began discussing with Scott the possibility of her withdrawing from Apogee.  Cynthia considered withdrawing because of her estranged relationship with Scott and her concern regarding Scott's management of Apogee.  These discussions were conducted through legal counsel.  Throughout 2018, Scott had a number of Apogee's properties independently appraised.

---

[2] We refer to Scott, Cynthia, and Jeffery individually for clarity.  No disrespect is intended.

On March 14, 2018, Scott's attorney sent Cynthia's attorney a proposed settlement agreement to buy out Cynthia's membership interest based on the appraised values, assignment of promissory notes and deeds of trust for other properties, and half of Apogee's cash reserves. Scott and Cynthia were unable to agree on the terms of sale and the proposed agreement was never signed.

On December 6, 2018, Scott's attorney sent Cynthia's attorney an e-mail which stated that if Cynthia did not agree to settle by December 21, then Scott would proceed with managing Apogee for their mutual benefit. The e-mail also stated that this would likely result in the sale of Apogee's properties at their appraised figures.

On November 27, 2019, Scott's attorney sent a letter to Cynthia concerning her withdrawal and buyout. The letter stated that if Cynthia consented to the terms of the buyout, then she should sign the attached withdrawal/buyout agreement. Cynthia did not agree to the proposal and did not return a signed agreement.

On December 20, 2019, Scott's attorney sent a follow up letter to Cynthia concerning her withdrawal and buyout. Scott's attorney stated that if Cynthia did not sign the withdrawal/buyout agreement by December 31, then Scott would proceed with the buyout. Cynthia did not sign the withdrawal/buyout agreement. No meeting was called in accordance with article 5.3 of the operating agreement concerning Cynthia's withdrawal and buyout.

Scott then began selling various Apogee properties to LLCs he owned or were under his control. Scott stated that he "sold Apogee's real property to LLCs which [he] had formed in order to liquidate its assets in furtherance of [Cynthia's] withdrawal." Clerk's Papers (CP) at 228.

On November 13, 2020, Cynthia again expressed interest in withdrawing from Apogee, but reiterated that the previous proposals were unacceptable. Cynthia also raised concerns about Scott's management of the company. Specifically, Cynthia expressed concern that most, if not all, of Apogee's assets were sold to entities owned or controlled by Scott and that certain assets were missing. Cynthia requested an accounting within the next 30 days.

On February 3, 2021, Cynthia's attorney sent a follow up letter to Scott's attorney about the accounting request. Cynthia did not receive the accounting.

There is no evidence in the record that Cynthia signed any of the proposed withdrawal/buyout agreements. Additionally, there is no evidence that a meeting or vote occurred on the issue of Cynthia's withdrawal.

Apogee's only remaining assets are the proceeds from the real property sales at issue and some general company cash. In other words, Apogee owns no remaining real estate.

III.    RELEVANT PROVISIONS OF APOGEE'S RESTATED OPERATING AGREEMENT

Cynthia declared that, based on Scott's conduct and lack of transparency, she felt it was impossible for Scott to carry out Apogee's interests and operations as its manager. However, Apogee's power structure prevented either member from unilaterally removing the other. Cynthia contends that this resulted in a deadlock which is irreconcilable.

The provisions of Apogee's operating agreement that require a 51 percent vote in writing or pursuant to a meeting under article 5.3 are: the removal of the manager, withdrawal of a member, and dissolution of Apogee.

55882-3-II

Article IV, section 4.3(b) provides the method in which the manager can be removed. That provision reads, in relevant part,

(b)    A Manager may be removed, for any reason, by the *affirmative vote*, *in writing*, of the holders of fifty-one percent (51%) of the outstanding Percentage Interests, *including any Percentage Interests held by the Manager whose removal is being voted upon*.

CP at 181 (emphasis added).

Article VI, section 6.2 provides the method in which a member can withdraw from Apogee. That provision reads,

6.2    Withdrawal of a Member.  A Member may withdraw from the Company only with *consent* of the holders of fifty-one percent (51%) of outstanding Percentage Interests.  In such an event, the Company shall purchase the Percentage Interests of the withdrawing Member at Fair Market Value.

CP at 182 (emphasis added).

Article VII, section 7.1 provides two methods to dissolve Apogee. That provision reads,

7.1    Events Causing Dissolution.  The Company will be dissolved and its affairs will be wound up upon the happening of the first to occur of the following:
(a)    The *affirmative vote* of a Manager and the holders of fifty-one percent (51%) of the outstanding Percentage Interests; or
(b)    The entry of a decree of judicial dissolution pursuant to the Act.

CP at 184 (emphasis added).

Article IX, section 9.2 provides the definition for affirmative vote and consent.  That provision reads,

9.2    Actions of Company.  Except as otherwise provided herein, any action identified herein as requiring the agreement, vote or consent of the Members shall require the affirmative agreement, vote or consent of the Members (in writing or at a meeting described in Section 5.3) owning fifty-one percent (51%) of the outstanding Percentage Interests.

CP at 186.

6

Article V, section 5.3 provides the method in which member meetings are called to order. In relevant part, that provision reads,

> 5.3 <u>Meetings</u>. Any Member, on not less than thirty (30) days' advance written notice to the other Members, may call a meeting of the Members to discuss or vote upon any matter which is reserved to a vote of the Members hereunder. Such notice shall include a description of the specific purpose of the meeting and any actions proposed to be voted upon by the Members at the meeting.

CP at 182.

Apogee's purpose as an LLC is to "acquire, develop, improve, lease, operate, encumber, sell, own and otherwise deal in and with real and personal property located in the State of Washington and elsewhere." CP at 177.

Under Article IV, section 4.1, the manager has the exclusive authority to do "any and all things necessary" to carry out Apogee's business activities. CP at 179. This includes the power "[t]o sell, assign, exchange or convey any right, title or interest in or to [Apogee's] assets." CP at 180.

Although Scott possesses broad authority in conducting Apogee's business affairs, his authority is not without limit. For the manager to wind up business affairs and liquidate the assets of Apogee, there must first be an event causing dissolution. Article 7.3 reads,

> 7.3 <u>Winding Up</u>. Upon dissolution of the Company for any reason, the Managers will have the authority and responsibility to wind up the affairs of the Company and to liquidate its assets.

CP at 184.

IV. PROCEDURAL HISTORY

On March 2, 2021, Cynthia filed a petition to dissolve Apogee and to appoint a general receiver. Cynthia requested dissolution because she contended that it was not reasonably practicable to carry on the activities of Apogee in conformity with its operating agreement.

Specifically, Cynthia contended that the basis of her petition included: deadlock on the issue of withdrawal and her buyout; Scott's failure to provide an accounting pursuant to the operating agreement; her concern that the buyout agreements did not accurately value her 50 percent interest in Apogee; Scott's misappropriation of business assets; Scott's self-dealing transfers; and Scott's alleged breach of fiduciary duties. Cynthia also requested the appointment of a general receiver to aid in dissolution and to pursue the assets that were sold by Scott.

In response, Scott argued that the superior court should deny the petition because article 9.9 of the operating agreement[3] required the parties to submit the issue of dissolution and receivership to binding arbitration. Scott also argued that there was no basis to order dissolution and that it would be premature to appoint a receiver.

On April 2, following a show cause hearing, the superior court commissioner denied Cynthia's petition. The commissioner reserved ruling on whether the arbitration clause applied in this case.

Cynthia moved to revise the commissioner's order. The superior court granted the motion. In its oral ruling, the court noted the deadlock between Scott and Cynthia:

> What we have here is a very unfortunate situation where the two remaining members in this company have the exact same interest, 50/50. And from what I've read, there is a deadlock.

---

[3] Article IX, section 9.9 of the operating agreement reads,

> Arbitration. Any legal dispute between or among Members and/or Manager(s) may, at the sole option of the Manager(s), be submitted to binding arbitration by any customary and reasonable method of arbitration then practiced in Pierce County, Washington.

CP at 187.

> We have one member who has pretty much sold off all of the revenue-producing assets. There is clearly a dispute between the members, which it does not appear there's any way to resolve within the terms of the operating agreement because of the 50/50 split between the members. And we are left with one member who really has no power to exercise her rights under the operating agreement because nobody has 51 percent anymore.

Report of Proceedings (RP) (Apr. 30, 2021) at 29-30. Based on the record before it, the court concluded that it was not reasonably practicable for Apogee to carry on its business activities in conformity with its operating agreement and that the appointment of a receiver was justified:

> [B]ased on the facts that have been presented, the Court is finding that it is no longer reasonably practical to operate this company. And I believe that appointment of a receiver is justified under these circumstances.
>      . . . .
> I think dissolution is required because it's impossible now for the parties to fully exercise their rights under this operating agreement with a 50/50 split of power.

RP (Apr. 30, 2021) at 30-31. The court also concluded that the arbitration provision did not apply to Cynthia's petition and the circumstances rendered dissolution equitable:

> There was sort of a request to also look at the arbitration provision of the operating agreement. And it is true that paragraph 9.9 did provide that the parties would submit to binding arbitration at the sole decision of the manager. However, based on my ruling and my finding that it is simply inequitable to have a situation where one of the members has no remedies that were formally provided under the operating agreement, I'm also finding that it would be inequitable to enforce the mandatory arbitration clause of the operating agreement.
> So I will allow this matter to proceed in court. And if the parties at some point agree—and by parties, I now am including in the receiver—if the parties agree that they wish to engage in arbitration, nothing I'm saying today would preclude that. So I'm just saying it's not required under the agreement. The parties can still move forward with arbitration if they find ultimately that that would be a more efficient way to resolve the remaining disputes.

RP (Apr. 30, 2021) at 31.

Accordingly, the superior court entered an order granting Cynthia's petition to dissolve Apogee and to appoint a general receiver. The court also ordered that the issues of dissolution and receivership were not subject to the binding arbitration clause in the operating agreement.

Scott moved for reconsideration pursuant to CR 59, which the court denied. In its oral ruling denying Scott's motion for reconsideration, the court stated,

> I want to make something very clear at the outset though. I think there was some misunderstanding of my initial ruling. My concern in granting the request for a receiver was not the propriety of the real estate transactions. I made no judgement [sic] as to whether those were good or bad faith. And I don't think I could have because the receiver has not yet done any sort of investigation, there's been no accounting, et cetera.
>
> The basis for the Court's holding last time was this problem with the 50/50 ownership split, and the fact that without 100 percent agreement of the members, this company can never be dissolved. I think that's a problem. . . . When we have that kind of problem and there doesn't appear to be any way to give someone a 51 percent ownership interest, at least right now, the Court sees no other way to end the problem than to appoint a receiver and start winding things down. So that is what the Court was thinking last time.
>
> . . . .
>
> It's almost like if we were in contract law, this would be like the contract being void for impossibility of performance because the parties just cannot fulfill the terms of the Operating Agreement anymore.

RP (May 21, 2021) at 26-27. Scott appeals the superior court's order dissolving Apogee and appointing a receiver.

## ANALYSIS[4]

### I.     ARBITRATION

Scott argues that the superior court erred by declining to enforce the arbitration clause in Apogee's operating agreement. We disagree.

#### A.     Legal Principles

We review de novo a superior court's decision to compel or deny arbitration. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 46, 470 P.3d 486 (2020). "The burden of demonstrating that an arbitration agreement is not enforceable is on the party opposing the arbitration." *Id*. at 46-47.

---

[4] Scott argues that he did not breach any fiduciary duties based on the self-dealing transfers. However, the superior court expressed no opinion on these transfers or whether Scott breached any fiduciary duty. Accordingly, we do not address Scott's argument pertaining to that issue.

10

"[B]oth state and federal law strongly favor arbitration and require all presumptions to be made in favor of arbitration." *Gandee v. LDL Freedom Enters., Inc*., 176 Wn.2d 598, 603, 293 P.3d 1197 (2013); *see also* RCW 7.04A.060, .070. "In determining whether to enforce an arbitration provision, [we] must consider (1) 'whether the arbitration agreement is valid' and (2) 'whether the agreement encompasses the claims asserted.'" *Cox v. Kroger Co.*, 2 Wn. App. 2d 395, 404, 409 P.3d 1191 (2018) (quoting *Wiese v. CACH, LLC*, 189 Wn. App. 466, 474, 358 P.3d 1213 (2015)).

"The agreement to arbitrate is a contract, the validity of which courts review absent a clear agreement to not do so." *Burnett*, 196 Wn.2d at 46. "'Mutual assent is required for the formation of a valid contract.'" *Id*. at 48 (internal quotation marks omitted) (quoting *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 388, 858 P.2d 245 (1993)). "As a general rule, nonsignatories are not bound by arbitration clauses." *Townsend v. Quadrant Corp*., 173 Wn.2d 451, 460, 268 P.3d 917 (2012). "However, courts have recognized limited exceptions to this rule, including the principle of equitable estoppel." *Id*. at 461. "Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Id*. (internal quotation marks omitted) (quoting *Mundi v. Union Sec. Life Ins. Co*., 555 F.3d 1042, 1045-46 (9th Cir. 2009)). "[E]quitable estoppel may require a nonsignatory to arbitrate a claim if that person, despite never having signed the agreement, 'knowingly exploits' the contract in which the arbitration agreement is contained." *Id*. (quoting *Mundi*, 555 F.3d at 1046).

Whether a dispute is subject to arbitration is decided by the terms of the parties' agreement "without inquiry into the merits of the dispute." *Heights at Issaquah Ridge, Owners Ass'n v. Burton Landscape Grp., Inc*., 148 Wn. App. 400, 403, 200 P.3d 254 (2009). We read agreements

to uphold the parties' objective intent as shown by the terms used. *Hearst Commc'ns, Inc. v. Seattle Times, Co.*, 154 Wn.2d 493, 503-04, 115 P.3d 262 (2005). "'An interpretation of a writing which gives effect to all of its provisions is favored over one which renders some of the language meaningless or ineffective.'" *GMAC v. Everett Chevrolet, Inc.*, 179 Wn. App. 126, 140, 317 P.3d 1074 (2014) (quoting *Wagner v. Wagner*, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980)).

B.      Validity of the Arbitration Clause

As an initial matter, Scott appears to argue that the superior court's failure to issue findings of fact and conclusions of law on the issue of arbitration amounts to reversible error. As discussed above, the court declined to apply the arbitration clause because it would be "inequitable" under the circumstances of this case. RP (Apr. 30, 2021) at 31. In equity, no findings of fact and conclusions of law are required. *See Mony Life Ins. Co. v. Cissne Family, LLC*, 135 Wn. App. 948, 952, 148 P.3d 1065 (2006). Accordingly, this argument fails.

The parties dispute whether the arbitration clause is procedurally unconscionable with respect to Cynthia because she did not sign the operating agreement. However, as Scott points out, Cynthia raises the issue for the first time on appeal. Because the issue was not raised in the superior court, we decline to address Cynthia's argument concerning procedural unconscionability on appeal. RAP 2.5(a).

C.      The Issue of Dissolution is Not Encompassed by the Arbitration Clause

Scott argues that the arbitration clause encompasses the issue of dissolution because Cynthia's petition implicates a legal dispute between Apogee's members and managers. We disagree.

Article 9.9 of Apogee's operating agreement provides that,

> *Any legal dispute between or among Members and/or Manager(s)* may, at the sole option of the Manager(s), be submitted to binding arbitration by any customary and reasonable method of arbitration then practiced in Pierce County, Washington.

CP at 187 (emphasis added).

Here, the objective intent as shown by the terms used limits arbitration to legal disputes between or among members and/or managers of Apogee. But, the issue of dissolution is not a legal dispute "between or among Members and/or Manger(s)." CP at 187. Instead, it is a proceeding with respect to the continuing existence of the private entity at issue. *See* RCW 25.15.265, .274. Because a petition for judicial dissolution is not a legal dispute between Apogee's members and managers, we conclude that Scott's argument fails.[5]

Scott contends that the issue of dissolution is a legal dispute between or among members because the core of Cynthia's petition is based on whether he breached certain fiduciary duties and whether he properly managed Apogee. But whether a dispute is subject to arbitration is decided by the terms of the parties' agreement "without inquiry into the merits of the dispute." *Heights at Issaquah Ridge*, 148 Wn. App. at 403. Accordingly, this argument fails.

Scott also argues that an arbitrator possesses broad authority under the Uniform Arbitration Act (UAA), chapter 7.04A RCW, which includes the power to order dissolution. Cynthia argues that an arbitrator has no authority to issue a decree of dissolution because such authority is exclusively reserved to the superior courts, citing RCW 25.15.018(3)(k) and RCW 25.15.274.

---

[5] On this point, Scott is correct that the arbitration clause at issue here is far broader than that in *JC Aviation Investments, LLC v. Hytech Power, LLC*, No. 81539-3-I, slip op. at 2 (Wash. Ct. App. Mar. 1, 2021) (unpublished), http://www.courts.wa.gov/opinions/pdf/815393.pdf. But his reliance on *JC Aviation* fails because the objective intent of the arbitration clause here, as evidenced by the words used, does not cover dissolution proceedings.

RCW 25.15.018(3)(k) provides that "[a] limited liability company agreement may not: . . . [v]ary the power of a court to decree dissolution in the circumstances specified in RCW 25.15.274." And RCW 25.15.274 provides that

> [o]n application by a member or manager the superior courts may order dissolution of a limited liability company whenever: (1) It is not reasonably practicable to carry on the limited liability company's activities in conformity with the certificate of formation and the limited liability company agreement; or (2) other circumstances render dissolution equitable."

Even if Apogee's arbitration clause encompassed the issue of dissolution, which it does not, and even if the superior courts did not retain exclusive jurisdiction over dissolutions pursuant to RCW 25.15.274, that clause in the operating agreement cannot limit the power of a court to order dissolution under RCW 25.15.274 on application by a member.[6] RCW 25.15.018(3)(k). Therefore, in no circumstance could we conclude that the arbitration clause required Cynthia to submit the issue to binding arbitration. She is permitted to seek a decree of dissolution in the superior court.

Additionally, Scott's interpretation of the operating agreement also fails to give effect to article 7.1, which provides the methods in which dissolution can occur.

Article 7.1 provides that,

> Events Causing Dissolution. The Company will be dissolved and its affairs will be wound up upon the happening of the first to occur of the following:
>         (a) The affirmative vote of a Manager and the holders of fifty-one percent (51%) of the outstanding Percentage Interests; or
>         (b) The entry of a decree of judicial dissolution pursuant to the Act.

CP at 184. Article 1.1 of the operating agreement defines the term "Act" as the Washington Limited Liability Companies (LLC) Act, chapter 25.15 RCW. CP at 177. RCW 25.15.274

---

[6] For this reason, Scott's reliance and argument based on *Verbeek Properties, LLC, v. GreenCo Envtl., Inc.*, 159 Wn. App. 82, 92, 246 P.3d 205 (2010), fails.

provides the authority for a superior court to dissolve an LLC. By allowing for dissolution pursuant to RCW 25.15.274, Article 7.1 is an objective manifestation that the parties intended to allow a member of Apogee to seek a decree of dissolution in superior court, as contemplated by the statute. Because Scott's argument would nullify article 7.1(b), we reject Scott's arguments. *GMAC*, 179 Wn. App. at 140 ("An interpretation of a writing which gives effect to all of its provisions is favored over one which renders some of the language meaningless or ineffective.") (quoting *Wagner*, 95 Wn.2d at 101). Therefore, we hold that the arbitration clause does not encompass the issue of dissolution.

D.      The Issue of Receivership is Not Encompassed by the Arbitration Clause

Scott argues that the arbitration clause encompasses the issue of receivership because Cynthia's petition implicates a legal dispute between Apogee's members and managers. We disagree.

As explained above, the objective intent of the parties, as shown by the terms used, limits arbitration to legal disputes between or among members and managers of Apogee. Also like dissolution, the appointment of a receiver is not a dispute between or among members and managers of Apogee. Rather, "'a receivership is merely ancillary to the main cause of action'"— it is a remedy. *Bero v. Name Intelligence, Inc*, 195 Wn. App. 170, 176, 381 P.3d 71 (2016) (quoting *King County Dep't of Cmty. & Human Servs. v. Nw. Defenders Ass'n*, 118 Wn. App. 117, 127-28, 75 P.3d 583 (2003)). Because the appointment of a receiver is not a legal dispute between members or managers of Apogee, we hold that the arbitration clause does not encompass the issue of receivership. Accordingly, Scott's argument fails.

Scott argues that an arbitrator has broad authority under the UAA, chapter 7.04A RCW, which includes the power to appoint and oversee receivers. Cynthia argues that arbitration clause cannot encompass the issue of receivership because under the receivership statute, chapter 7.60 RCW, the superior court has exclusive jurisdiction to appoint and oversee a receiver. We agree with Cynthia.

A receiver is defined as "*a person appointed by the court* as the court's agent, and subject to the court's direction, to take possession of, manage, or dispose of property of a person." RCW 7.60.005(10) (emphasis added). Additionally, the receivership statute provides in relevant part that

> *the court in all cases has exclusive authority over the receiver*, and the exclusive possession and right of control with respect to all real property and all tangible and intangible personal property with respect to which the receiver is appointed, wherever located, and the exclusive jurisdiction to determine all controversies relating to the collection, preservation, application, and distribution of all the property, and all claims against the receiver arising out of the exercise of the receiver's powers or the performance of the receiver's duties.

RCW 7.60.055(1) (emphasis added).

Because a receiver is defined as a person appointed by the superior court, and because the court maintains exclusive authority over the receiver, an arbitrator could not appoint and oversee a general receiver. Therefore, Scott's argument fails.

Additionally, we also note that by referencing the LLC act, Apogee's operating agreement also indirectly provides for the appointment of a receiver. Under the receivership statute, the superior court may appoint a general receiver:

> (t) . . . in any other action for the dissolution or winding up of any other entity provided for by Title . . . 25 RCW;

(u) In any action in which the dissolution of any public or private entity is sought, in any action involving any dispute with respect to the ownership or governance of such an entity, or upon the application of a person having an interest in such an entity when the appointment is reasonably necessary to protect the property of the entity or its business or other interests.

RCW 7.60.025(1). By allowing for dissolution pursuant to RCW 25.15.274, the objective intent of the parties, as evidenced by the writing, is that they also intended to allow a member to seek the appointment of a receiver, which is ancillary to seeking a decree of dissolution in superior court, as contemplated by the statute. *Bero*, 195 Wn. App. at 176; *GMAC*, 179 Wn. App. at 140. Accordingly, we hold that the arbitration clause does not encompass the issue of receivership.

II.      JUDICIAL DISSOLUTION

Scott argues that the superior court abused its discretion by ordering the dissolution of Apogee. We disagree.

A.      Legal Principles

We review an order granting judicial dissolution for an abuse of discretion. *Scott v. Trans-Sys., Inc*. 148 Wn.2d 701, 707-08, 64 P.3d 1 (2003) (addressing corporate dissolution). The superior court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or reasons. *Spencer v. Badgley Mullins Turner, PLLC*, 6 Wn. App. 2d 762, 784, 432 P.3d 821 (2018).

The grounds upon which a superior court may order dissolution of an LLC are provided in RCW 25.15.274. That statute reads,

On application by a member or manager the superior courts may order dissolution of a limited liability company whenever: (1) It is not reasonably practicable to carry on the limited liability company's activities in conformity with the certificate of formation and the limited liability company agreement; or (2) other circumstances render dissolution equitable.

17

RCW 25.15.274.[7] "Dissolution should not be granted as a matter of right, since the provision allowing judicial dissolution is 'clearly couched in language of permission.'" *Scott*, 148 Wn.2d at 708 (quoting *Henry George & Sons, Inc. v. Cooper-George, Inc.*, 95 Wn.2d 944, 951, 632 P.2d 512 (1981)).

### B. The Superior Court did Not Err by Failing to Enter Findings of Fact

As an initial matter, Scott appears to argue that the superior court's order should be reversed because it failed to enter findings of fact. We disagree.

A petition to dissolve a private entity is not a legal dispute—it is equitable in nature. *See Scott*, 148 Wn.2d at 716 (addressing corporate dissolution proceedings); *see also Cooper-George, Inc.*, 95 Wn.2d at 952 (stating that involuntary dissolution proceedings, although generally statutory in most jurisdictions, are fundamentally equitable in nature, and the statutes should be construed and applied consistent with equitable principles). In equity, no findings of fact and conclusions of required. *Mony Life Ins. Co.*, 135 Wn. App. at 952. Accordingly, this argument fails.

Regardless, even if the superior court was required to enter findings of fact on the issue of dissolution, its failure is not fatal to an order if we can determine the questions the superior court decided and the reasons for its decision. *Noll v. Special Elec. Co., Inc.*, 9 Wn. App. 2d 317, 322, 444 P.3d 33 (2019). The reviewing court can consider the superior court's oral ruling to aid this

---

[7] Based on the plain language of the statute, it appears the superior court must consider both the certification of formation *and* the LLC agreement. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 452, 210 P.3d 297 (2009) ("'[E]ach word of a statute is to be accorded meaning.'") (quoting *State ex rel. Schillberg v. Barnett*, 79 Wn.2d 578, 584, 488 P.2d 255 (1971)). Scott does not take issue with the fact that Apogee's certification of formation is not in the record. Actually, nobody mentions the issue at all. Generally, a party's failure to provide argument and citation to authority constitutes a waiver of the issue. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Accordingly, we do not address the issue.

determination. *Id.* If the reviewing court is unable to determine the trial court's understanding, then the appropriate remedy is to remand the case for findings of fact. *Id.* at 323.

Here, we can determine the issues the superior court decided and the reasons for its decision. In its oral ruling, the court ordered dissolution because, based on the record, it believed it was not reasonably practicable for Apogee to carry on its activities in conformity with its operating agreement. The court also appeared to reason that, based on the record, other circumstances rendered dissolution equitable. More specifically, the court found it "simply inequitable to have a situation where one of the members has no remedies that were formally provided under the operating agreement." RP (Apr. 30, 2021) at 31. Because we can determine the issues the superior court decided and the reasons for its decision, we conclude that the superior court did not err by failing to enter findings of fact on the issue of dissolution. *Noll*, 9 Wn. App. 2d at 322.

C. The Superior Court did Not Abuse Its Discretion by Ordering Dissolution

Scott appears to argue that the superior court abused its discretion by ordering dissolution because it failed to consider the seriousness of the deadlock and whether dissolution would be beneficial to its members or injurious to the public. Scott relies on *Cooper-George, Inc.*, 95 Wn.2d 944, to support his argument. This argument fails.

In *Cooper-George*, the Supreme Court held that the trial court erred by ordering dissolution of the corporation at issue under former RCW 23A.28.170(1) (1965) merely on the basis that one of the jurisdictional requirements were met. 95 Wn.2d at 953. Under the former statute, a court could order dissolution of a corporation if a shareholder could prove one of four reasons. *Id.* at 946-47. After interpreting prior statutes and case law, the court held former RCW 23A.28.170(1) contemplates that when a shareholder proves one of the bases for dissolution, then the trial court

19

"shall determine whether there exist equitable grounds for ordering dissolution of the corporation." *Id*. at 953. The court went on to state that, "[i]n so ruling, the trial court should consider the seriousness of the deadlock and whether the corporation is able to conduct business profitably despite the deadlock. Moreover, the trial court should consider whether such a dissolution will be beneficial or detrimental to all the shareholders, or injurious to the public." *Id*.

Scott's reliance on *Cooper-George* is misguided because that case dealt with the former corporate dissolution statute and its predecessor statutes, which provided specific bases and inquiries for dissolution. *See id*. at 946-47. Unlike the former corporate dissolution statute, RCW 25.15.274 does not appear to require inquiry into whether dissolution would be beneficial for all members or injurious to the public. Scott provides no authority requiring such an inquiry into the dissolution of an LLC. *See* Larry E. Ribstein and Robert R. Keatinge, *Judicial dissolution*, 2 RIBSTEIN AND KEATINGE ON LTD. LIAB. COS. § 14:18 (June 2021) ("The showing required for judicial dissolution of an LLC may differ from that for a corporation."). "Where no authorities are cited in support of a proposition, we are not required to search out authorities, but may assume that counsel, after [a] diligent search, has found none." *Helmbreck v. McPhee*, 15 Wn. App. 2d 41, 57, 476 P.3d 589 (2020), *review denied*, 196 Wn.2d 1047 (2021). Accordingly, this argument fails.

Regardless, the record shows that the superior court did in fact consider whether equitable circumstances existed to dissolve Apogee. A review of the court's oral ruling shows that it considered the seriousness of the parties' deadlock (specifically, on the issue of removal, withdrawal, and dissolution) and the fact that Scott sold all of Apogee's revenue producing assets. The court also considered whether breaking the deadlock by dissolution would be beneficial for Apogee's members. Therefore, even if *Cooper-George*'s equitable inquiry applies to LLC

20

dissolutions, the record shows that the court did in fact consider those factors. Accordingly, this argument fails.

Next, Scott argues that the superior court abused its discretion by granting dissolution because it was reasonably practicable to carry on Apogee's activities in line with its operating agreement. Specifically, Scott contends that dissolution was unnecessary because he was already "in the midst of liquidating many of Apogee's assets to accommodate [Cynthia's] withdrawal" and that Apogee could carry on its business activities in line with its operating agreement since "Apogee possesses few remaining assets and has little business left to conduct." Br. of Appellant at 31. We disagree.

Here, Scott does not dispute that he "sold Apogee's real property to LLCs which [he] had formed in order to liquidate its assets in furtherance of [Cynthia's] withdrawal." CP at 228. However, there is no evidence that Cynthia withdrew from Apogee in accordance with article 6.2. She did not sign any of the buyout agreements and there is no evidence in the record that a meeting occurred in accordance with article 5.3 concerning her withdrawal. Additionally, there is no evidence that the parties agreed to dissolve Apogee in the manner described by article 7.1(a) to permit the liquidation of its assets under article 7.3. Again, there is no evidence in the record that the parties agreed in writing or conducted a meeting in accordance with article 5.3 to dissolve Apogee and permit liquidation.

The superior court did not abuse its discretion by concluding that it was not reasonably practicable to carry on Apogee's activities in conformity with its operating agreement. The business purpose of Apogee is "to acquire, develop, improve, lease, operate, encumber, sell, own and otherwise deal in and with real and personal property located in the State of Washington and elsewhere." CP at 177. However, Apogee's only remaining assets are the proceeds from Scott's

property sales and some company cash. There is no evidence that Scott will be acquiring any more real estate on behalf of Apogee. In fact, based on the record and Scott's arguments before us, it appears that he was in the process of winding up business affairs, dissolving, and liquidating Apogee without Cynthia's consent, even though she still remained a member, all the while doing so without a majority vote.

The superior court also did not abuse its discretion by concluding that other circumstances rendered dissolution equitable. Scott does not dispute that he sold Apogee's properties to LLCs that he owns for less than their fair market value.[8] The record shows that Scott was liquidating assets to facilitate Cynthia's withdrawal, but as explained above, she did not withdraw in conformity with the procedure set out by the operating agreement and no event of dissolution occurred to permit liquidation. Additionally, the parties were deadlocked on matters requiring a 51 percent vote between them, which was unobtainable, such as Cynthia's withdrawal, removal of Scott as the manager, and the issue of dissolution. Furthermore, the record shows that the relationship between Cynthia and Scott had become strained. Cynthia contends their differences are irreconcilable, which Scott does not appear to dispute. Scott also does not appear to dispute that he did not give Cynthia her requested accounting of Apogee's assets and transactions. Accordingly, the superior court did not abuse its discretion by ordering dissolution.

III.    GENERAL RECEIVERSHIP

Scott argues that the superior court abused its discretion by appointing a general receiver. We disagree.

---

[8] In Scott's motion for reconsideration, he stated that "the only allegation of a breach of fiduciary duty which [Cynthia] can credibly level against [Scott] is that, in exercising his exclusive authority to sell Apogee's property, he did so for lower than their fair market value." CP at 623.

A. Legal Principles

A superior court's decision to appoint a receiver is reviewed for an abuse of discretion. *Mony Life Ins. Co.*, 135 Wn. App. at 952. "A [superior] court abuses its discretion when its decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Id*. at 952-53 (internal quotation marks omitted) (quoting *T.S. v. Boy Scouts of Am.*, 157 Wn.2d 416, 423, 138 P.3d 1053 (2006)).

A receiver is "a person appointed by the court as the court's agent, and subject to the court's direction, to take possession of, manage, or dispose of property of a person." RCW 7.60.005(10). Relevant here, a receiver must be a "general receiver" if they are "appointed to take possession and control of all or substantially all of a person's property with authority to liquidate that property and, in the case of a business over which the receiver is appointed, wind up affairs." RCW 7.60.015.

Also relevant here, a receiver may be appointed by the superior court in the following instances:

> (t) . . . [In an] action for the dissolution or winding up of any other entity provided for by Title . . . 25 RCW;
> (u) In any action in which the dissolution of any public or private entity is sought, in any action involving any dispute with respect to the ownership or governance of such an entity, or upon the application of a person having an interest in such an entity when the appointment is reasonably necessary to protect the property of the entity or its business or other interests;
> . . . .
> (nn) In such other cases as may be provided for by law, or when, in the discretion of the court, it may be necessary to secure ample justice to the parties.

RCW 7.60.025(1). "Because receiverships are an 'extraordinary remedy,' Washington courts employ them with caution." *Bero*, 195 Wn. App. at 175 (quoting *Gahagan v. Wisner*, 139 Wash. 664, 667, 247 P. 965 (1926)).

23

B.       The Superior Court did Not Abuse Its Discretion by Appointing a General Receiver

Scott argues that the superior court abused its discretion in appointing a general receiver because it failed to make findings of fact on the issue. "But the appointment of a receiver does not require findings of fact and conclusions of law." *Mony Life Ins. Co.*, 135 Wn. App. at 952. This argument fails.

Scott also argues that the superior court abused its discretion in appointing a general receiver because it failed to consider whether such an appointment was reasonably necessary and that other remedies either are not available or are inadequate. We disagree.

The language that Scott relies on can be found in RCW 7.60.025(1). In relevant part, that statute provides,

> A receiver may be appointed by the superior court of this state in the following instances, but except in any case in which a receiver's appointment is expressly required by statute, or any case in which a receiver's appointment is sought by a state agent whose authority to seek the appointment of a receiver is expressly conferred by statute, or any case in which a receiver's appointment with respect to real property is sought under (b)(ii) of this subsection, *a receiver shall be appointed only if the court additionally determines that the appointment of a receiver is reasonably necessary and that other available remedies either are not available or are inadequate*.

RCW 7.60.025(1) (emphasis added). The statute then goes on to list multiple instances where a superior court may appoint a receiver. RCW 7.60.025(1)(a)-(nn).

Based on the plain language of RCW 7.60.025(1), the superior court must additionally ask whether the appointment of a receiver is reasonably necessary or if available remedies are inadequate in three specific cases: where a statute requires a receiver, a state agent seeks a receiver,

24

or a party seeks a receivership with respect to real property under RCW 7.60.025(1)(b)(ii). But none of those circumstances apply here. Rather, the superior court appointed a receiver to aid the dissolution of Apogee under RCW 7.60.025(1)(t), (u), and (nn). Therefore, such an inquiry was not required here. Accordingly, this argument fails.

Here, the superior court appointed a general receiver to aid in the dissolution and liquidation of Apogee as well as to make an accounting on the assets that were transferred by Scott to his own LLCs. Under RCW 7.60.025(1)(t), (u), and (nn), these are permissible reasons to appoint a general receiver. Additionally, the court also considered the equitable circumstances in dissolving Apogee and appointing a receiver based on the record before it, as discussed above. Accordingly, we hold that the superior court did not abuse its discretion by appointing a general receiver.

IV.     COSTS ON APPEAL

Both parties request their costs on appeal pursuant to RAP 14.2. Generally, the party that substantially prevails on review will be awarded appellate costs, unless the court directs otherwise in its decision. RAP 14.2; *Doe v. Benton County*, 200 Wn. App. 781, 793, 403 P.3d 861 (2017). Because Cynthia is the substantially prevailing party on review, we award her costs on appeal.

CONCLUSION

We affirm the superior court's order granting Cynthia's petition for dissolution and appointment of a general receiver. We also award Cynthia's appellate costs under RAP 14.2.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Worswick, P.J.

Lee, J.