# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| RAYMOND BERO, an individual, | No. 73434-2-I |
| Plaintiff, | (Consolidated with No. 73536-5-I) |
| v. | DIVISION ONE |
| NAME INTELLIGENCE, INC., a Washington corporation; JAY WESTERDAL, an individual; WESTERDALCORP LLC, a Washington limited liability company, | |
| Respondents, | PUBLISHED OPINION |
| PER WESTERDAL and MELODY WESTERDAL, individually and the marital community composed thereof, | FILED: July 25, 2016 |
| Appellants, | |
| JOHN AND JANE DOES 1-30, | |
| Defendants. | |

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2016 JUL 25 AM 10: 18

LEACH, J. — Per and Melody Westerdal appeal the trial court's order terminating this receivership proceeding. They contend that the trial court should have first either disallowed or adjudicated their claim to 25 percent of a valuable receivership asset. Because the receivership had fulfilled its purpose and the trial court reasonably determined it would be wasteful and unnecessary to continue it, the trial court did not abuse its discretion terminating it. We affirm.

FACTS

Jay Westerdal owns Name Intelligence Inc., a company that buys and sells Internet domain names. Raymond Bero, a former employee, sued Jay[1] and his companies, Name Intelligence and Westerdalcorp LLC. The parties settled in 2012.[2] As part of the settlement, Jay gave Bero a promissory note for $2.5 million. Jay's parents, Per and Melody, guaranteed Jay's debt to Bero up to $200,000. The next year, Bero sued Jay again, for breach of the settlement agreement. He alleged that Jay defaulted on his payments and attempted to sell domain names that Bero had an interest in. The trial court eventually entered a $1.4 million judgment against Jay.

Jay did not pay the judgment. At Bero's request, in August 2014, the trial court placed Jay's companies and certain real and personal property in receivership. The primary purpose of the receivership was to protect Bero's security interests in Jay's assets. Later, in December 2014, Jay satisfied Bero's judgment against him.

---

[1] For clarity, Jay and his parents, Per and Melody, are referred to by their first names.

[2] Although Bero named Jay's parents, Per and Melody Westerdal, in the complaint, they were later dismissed.

Also during the receivership, Per and Melody asserted a $350,000 secured claim, which included their guaranty payment to Bero and other loans. Jay paid Per and Melody this amount in full in December 2014.

Meanwhile, Jay had a brokerage agreement, made before the receivership, with Breathe Luxury Limited to auction off a high-priced domain name, "holiday.com." Jay and Breathe Luxury disagreed about how Breathe Luxury would conduct the auction. Jay wrote Breathe Luxury in November 2015, two days before the scheduled auction. His letter accused Breathe Luxury of breaching the brokerage agreement and declared the auction off. Breathe Luxury proceeded with the auction but did not receive a bid that met the reserve price.

In December 2014, after Jay had paid his secured debts to his parents and Bero, Per and Melody asserted an unsecured claim to 25 percent of holiday.com's eventual sale price.[3] The trial court denied without prejudice Per and Melody's motion to allow this claim. At a March 2015 hearing, the trial court determined that it did not need to decide this claim as part of the receivership, as the claim was not within the scope of the initial order and Per and Melody could assert it in a separate lawsuit. The trial court terminated the receivership.

---

[3] They also claimed that Jay owed them several other debts; altogether, they claimed over $1.6 million, $957,825 of it for holiday.com.

Per and Melody appeal the trial court's orders terminating the receivership and denying their motion for reconsideration.

ANALYSIS

Trial Court's Authority To Terminate Receivership

The parties disagree about how and whether chapter 7.60 RCW limits the trial court's ability to terminate a receivership. How much discretion chapter 7.60 RCW gives the trial court presents a question of statutory interpretation that this court reviews de novo.[4]

This court interprets a statute primarily "to ascertain and give effect to the intent of the legislature."[5] It begins "with the statute's plain language and ordinary meaning."[6] "Where the legislature has not defined a term, we may look to related statutes and dictionary definitions, as well as the statute's context, to determine the plain meaning of the term."[7]

Chapter 7.60 RCW gives the trial court broad discretion over receiverships.[8] For instance, the power to appoint a receiver is discretionary.[9]

---

[4] Bostain v. Food Express, Inc., 159 Wn.2d 700, 708, 153 P.3d 846 (2007).
[5] Cornu–Labat v. Hosp. Dist. No. 2, 177 Wn.2d 221, 231-32, 298 P.3d 741 (2013).
[6] Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wn.2d 9, 19, 978 P.2d 481 (1999).
[7] Buchheit v. Geiger, 192 Wn. App. 691, 696, 368 P.3d 509 (2016).
[8] See, e.g., RCW 7.60.055; 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 18.6, at 310 (2d ed. 2004).

No. 73434-2-I (consol. with
No. 73536-5-I) / 5

The trial court appoints a receiver "as the court's agent, and subject to the court's direction, to take possession of, manage, or dispose of property of a person."[10] A general receiver thus has broad powers to manage the receivership property, liquidate assets, and satisfy creditors.[11]

Because receiverships are an "extraordinary remedy," Washington courts employ them with caution.[12] Except in certain narrow, inapplicable circumstances, the trial court may appoint a receiver only when it finds that a receivership "is reasonably necessary and that other available remedies either are not available or are inadequate."[13] Accordingly, Washington courts have long recognized that a receivership should terminate "'as soon as practicable after its

---

[9] MONY Life Ins. Co. v. Cissne Family L.L.C., 135 Wn. App. 948, 952-53, 148 P.3d 1065 (2006).

[10] RCW 7.60.005(10).

[11] RCW 7.60.015. The statute defines "general receiver" as one "appointed to take possession and control of all or substantially all of a person's property with authority to liquidate that property and, in the case of a business over which the receiver is appointed, wind up affairs."

[12] Gahagan v. Wisner, 139 Wash. 664, 667, 247 P. 965 (1926); King County Dep't of Cmty. & Human Servs. v. Nw. Defs. Ass'n, 118 Wn. App. 117, 127, 75 P.3d 583 (2003) ("A court acting in equity must act with restraint."); RCW 7.60.025(1).

[13] RCW 7.60.025(1); Nw. Defs. Ass'n, 118 Wn. App. at 126. Those narrow circumstances are where a statute requires a receiver, a state agent seeks a receiver, or a party seeks a receivership with respect to real property under RCW 7.60.025(1)(b)(ii).

-5-

purposes have been accomplished.'"[14] "[A] receivership is merely ancillary to the main cause of action; it is not an independent remedy."[15]

Per and Melody do not contend that the statutory section on termination limits the trial court's ability to terminate a receivership. Indeed, this argument would fail under the statute's plain language. RCW 7.60.290(5) gives the trial court the "power to" terminate the receivership: "Upon motion of any party in interest, or upon the court's own motion, the court has the power to discharge the receiver and terminate the court's administration of the property over which the receiver was appointed." By its terms, the section imposes no limit on the trial court's power to terminate the receivership.[16] And the term "power to" itself, without any mandatory or limiting language, implies a broad grant of discretion.[17]

---

[14] Boothe v. Summit Coal Mining Co., 63 Wash. 630, 634, 116 P. 269 (1911) (quoting 34 CYCLOPEDIA OF LAW AND PROCEDURE 310 (1910)).

[15] Nw. Defs. Ass'n, 118 Wn. App. at 127-28.

[16] The rest of the subsection provides,

> If the court determines that the appointment of the receiver was wrongfully procured or procured in bad faith, the court may assess against the person who procured the receiver's appointment (a) all of the receiver's fees and other costs of the receivership and (b) any other sanctions the court determines to be appropriate.

Contrary to Per and Melody's suggestion, that sentence plainly applies only when the trial court determines a party wrongfully procured the appointment—which no one contends was the case here—and even then it confers a discretionary power on the trial court.

[17] Black's Law Dictionary defines "power" as "[t]he ability to act or not act." BLACK'S LAW DICTIONARY 1358 (10th ed. 2014).

Despite the plain language of RCW 7.60.290(5), Per and Melody argue that other sections of the receivership statute limit the trial court's power. In particular, they claim that RCW 7.60.220(1) prohibits the trial court from terminating a receivership until all properly served claims have either been satisfied or affirmatively disallowed. This subsection states that "[c]laims properly served upon the general receiver and not disallowed by the court are entitled to share in distributions from the estate in accordance with the priorities provided for by this chapter or otherwise by law." Because they properly served their claim and the trial court did not disallow it, Per and Melody argue, they were "'entitled to share in distributions from'" the receivership assets. They contend they have a "statutorily vested right" that is terminable only when the court disallows their claim.

As with RCW 7.60.290(5), no court appears to have interpreted RCW 7.60.220(1). As neither the statute nor case law defines "entitle," a court looks "to extrinsic aids, such as dictionaries, to find the word's ordinary meaning."[18] Black's Law Dictionary defines "entitle" as "[t]o grant a legal right to or qualify for."[19] Per and Melody claim that the legislature intended to give claimants a

---

[18] Dep't of Labor & Indus. v. Kantor, 94 Wn. App. 764, 775, 973 P.2d 30 (1999) (interpreting "entitled" in Industrial Insurance Act, Title 51 RCW).
[19] BLACK'S, at 649. Webster's Third New International Dictionary 758 (2002) defines it similarly.

"vested right" to distributions, provided the claimants properly served their claim and the trial court did not disallow it.[20] Under this interpretation, properly serving a claim that is not then disallowed would be both necessary and sufficient to receive a distribution.

Per and Melody's proposed interpretation mandates distributions from receivership assets for every properly served claim the court does not disallow. This proposed interpretation conflicts with RCW 7.60.230, which states that the trial court must allow a claim before the receiver's duty to distribute to the creditor becomes mandatory.[21] It also conflicts with the receiver's discretionary powers of distribution.

We think a different interpretation is more practical and more consistent with the broad authority given to a general receiver to manage receivership property.[22] A claimant who becomes "entitled" by properly serving a claim, which the trial court does not then disallow, has taken steps necessary to qualify for, but not sufficient to receive, a distribution. This interpretation preserves the discretion of the trial court to manage the duration of the extraordinary remedy of

---

[20] They contend, "Structured as it is, RCW 7.60.220(1) permits objections then requires that they be sustained."

[21] RCW 7.60.230(1) provides, "<u>Allowed</u> claims in a general receivership <u>shall</u> receive distribution under this chapter in the order of priority under (a) through (h) of this subsection." (Emphasis added.)

[22] RCW 7.60.015.

-8-

receivership and to take into account such practical considerations as the

ongoing cost of continuing it. This latter interpretation is consistent with the

statutory scheme for receiverships, which gives the court broad discretion and

provides a general receiver with broad authority to manage receivership

property.[23]

In sum, because RCW 7.60.290(5) contains no language limiting the

power it grants a trial court to terminate a receivership, the statute gives the trial

court discretion when to terminate a receivership. This broad discretion

comports with the policy of treating receiverships as an exceptional remedy.[24] It

is also consistent with the law in other jurisdictions, as it appears that every

jurisdiction to address the issue has left the decision to terminate a receivership

to the trial court's sound discretion.[25] If the legislature intended chapter 7.60

RCW to mandate a trial court to decide all claims brought during a general

receivership before terminating it, the legislature easily could have done so.

---

[23] RCW 7.60.015.

[24] See Gahagan, 139 Wash. at 667; RCW 7.60.025(1).

[25] See, e.g., Hill v. Hill, 460 S.W.3d 751, 763 (Tex. App. 2015), review denied, No. 15-0327 (Tex. Aug. 14, 2015); Fifth Third Bank v. Dayton Lodge, LLC, ___ Ohio App. 3d ___, 2013-Ohio-5755, 6 N.E.3d 638, at ¶ 52; Singer v. Goff, 334 Mich. 163, 167, 54 N.W.2d 290 (1952); United States v. Amodeo, 44 F.3d 141, 146 (2d Cir. 1995); Sec. & Exch. Comm'n v. An-Car Oil Co., 604 F.2d 114, 119 (1st Cir. 1979); see also 13 AM. JUR. 2d Business Trusts § 90 (2009) ("The termination of a receivership also lies within the judicial discretion of the court, in the exercise of which the court will consider the rights and interests of all parties concerned.").

Trial Court's Use of Discretion To Terminate Westerdal Receivership

Per and Melody contend that the trial court disregarded its prior order, misunderstood its statutory duties and authority, and erroneously thought that keeping the receivership would add unnecessary complexity and waste resources while terminating it would not prejudice Per and Melody. In short, Per and Melody assert that the trial court abused its discretion in terminating the receivership.

Per and Melody contend that the trial court's own receivership order limited its discretion to terminate the receivership.[26] Per and Melody cite no authority for the proposition that a trial court's own order can limit its statutory authority. Generally, this court will not consider arguments without supporting legal authority.[27] But we do not need to decide this question of law because, as discussed below, the trial court did comply with its prior order.

But we note that the trial court has inherent authority to interpret and enforce its order.[28] And because a receivership is an equitable remedy and the

---

[26] Paragraph 2.52 provided that receiverships "shall terminate only upon payment in full of all amounts due the Receiver and satisfaction in full of all amounts due under the [Bero] Judgment."

[27] RAP 10.3(a)(6); MONY Life Ins. Co., 135 Wn. App. at 954.

[28] See Allen v. Am. Land Research, 95 Wn.2d 841, 852, 631 P.2d 930 (1981) ("The superior court's inherent authority to enforce orders and fashion judgments is not dependent on the statutory grant.").

receiver serves at the direction of the trial court,[29] the court retains the authority to modify the order appointing the receiver in light of changed circumstances.[30] Per and Melody offer no reason why the trial court could not change its mind if its later decision conflicted with its original order.

Per and Melody argue the trial court erroneously treated paragraph 2.52 as requiring, rather than permitting, the trial court to terminate the receivership on fulfillment of certain conditions. But nothing in the trial court's memorandum on its order indicates that it thought paragraph 2.52 required it to terminate the receivership.[31] It viewed paragraph 2.52 the same way Per and Melody do, as only permitting termination once the purpose of paying "all amounts due under the [Bero] Judgment" was satisfied. The trial court determined the judgment had been satisfied. It did not terminate the receivership because it thought it had to. It terminated the receivership because it knew it could and determined that it had

---

[29] MONY Life Ins. Co., 135 Wn. App. at 953; RCW 7.60.005(10).

[30] See State ex rel. Bradford v. Stubblefield, 36 Wn.2d 664, 674, 220 P.2d 305 (1950) ("[A] court of equity has inherent power to modify or vacate a permanent preventive injunction where a change in circumstances demonstrates that the continuance of the injunction would be unjust or inequitable or no longer necessary.").

[31] The court said, "While one could parse the language of the court's July 2014 order . . . to argue that this does not mandate the termination 'upon payment in full,' the point of the receivership, set out in Bero's motion last July, was for the purpose set out in paragraph 2.52 . . . . That condition has been met."

good reason to—specifically, the complexity of the issues Per and Melody raised and the ongoing cost of continuing the receivership.

Per and Melody challenge both these premises. They dispute that the purpose of the receivership was satisfied. They assert that their claim should have been subrogated to Bero's and thus that "all amounts due under the Judgment" were not fully satisfied before termination as paragraph 2.52 required. Under the settlement agreement, Per and Melody guaranteed Jay's debts to Bero up to $200,000.00. Jay then defaulted on his debt to Bero, triggering Per and Melody's liability. Per and Melody now contend that they "had the right to step into Bero's shoes" because Jay owes them the portion of his liability to Bero that Per and Melody "satisfied via the Guaranty." But Jay repaid that money to Per and Melody. Jay gave his mother a check for $359,028.65 on December 3, 2014, in full satisfaction of the guaranty payment and other loans. Per and Melody acknowledge the payment. Still, Per and Melody claim that Jay's liability to them under the guaranty means the "requirement that 'all amounts due under the Judgment' be fully satisfied was not met." This misrepresents the record. Per and Melody's claim to 25 percent ownership in holiday.com is completely separate from Jay's liability under the guaranty.

Per and Melody further contend the trial court ignored its statutory authority in terminating the receivership without addressing their claim. They assert that because RCW 7.60.055 gives the trial court exclusive jurisdiction over all property "with respect to which the receiver is appointed," the trial court must adjudicate their claim within the receivership, since they could not bring it elsewhere during the receivership. But they do not explain why, with the receivership terminated, they cannot now bring their claim as a separate lawsuit in an appropriate court.

Per and Melody also contend that the trial court disregarded RCW 7.60.220(3), which allows the court to estimate an unliquidated claim when liquidation would "unduly delay the administration" of the receivership. Per and Melody contend the trial court should have at least considered estimation to eliminate the complexity of Per and Melody's claim. They offer no authority, however, that would require the trial court to estimate a claim when the claim is outside the purpose of the receivership and that purpose has already been fulfilled.

Thus, Per and Melody are wrong that the trial court misinterpreted its prior order.

Per and Melody also challenge the trial court's reasons for terminating the receivership, even if its purpose was satisfied. Contrary to the trial court, they contend that keeping the receiver would not add unnecessary complexity and waste resources and that ending the receivership would prejudice them.

We review the trial court's decision to terminate for an abuse of discretion. The trial court's reasoning with respect to complexity and waste is persuasive; Per and Melody's is not. The trial court cited the receivership's cost: $6,000 per month for the receiver, with attorney fees of $525 per hour. The receiver would also take a one percent commission from a sale of holiday.com. Per and Melody's response to these costs is, in short, that the parties could stop paying the receiver.

Per and Melody also assert that resolving their claim within the receivership would have several practical advantages: the trial court had Per and Melody's claim and Jay's response in front of it; it controlled assets that were central to the dispute under RCW 7.60.055(1); "[t]he Receiver was on hand, serving as an arm of the court"; and the trial court could estimate Per and Melody's claim under RCW 7.60.220(3). This court does not need to speculate about how much these perceived conveniences would actually benefit Per and Melody. The trial court could reasonably decide that other procedural obstacles

-14-

under the receivership statute counter these advantages: Jay has reserved the

argument that the claim was time barred under RCW 7.60.210, to which Per and

Melody's only defense is their unsupported statement that notice of the

receivership went to the wrong address. And, under RCW 7.60.220(2), Per and

Melody would still have to mediate the claim, which Jay requested, but Per and

Melody have apparently refused to do.[32]

The trial court could also reasonably find unpersuasive Per and Melody's

assertions that the termination of the receivership prejudices them. They point to

three advantages that they contend the receivership statute offers them: that

their claim was "deemed allowed absent affirmative disallowance by the trial

court"; that the statute allows the trial court to estimate their claim, allowing for

reductions in time and expense; and that RCW 7.60.210(4) provides a

presumption that Per and Melody's claim was valid.[33] But these "protections"

would not help resolve Per and Melody's claim. For instance, Per and Melody's

argument based on the claim estimation provision, RCW 7.60.220(3), is circular.

The purpose of that provision is to avoid "unduly delay[ing] the administration of

---

[32] "Upon the request of . . . any party in interest objecting to the creditor's claim, . . . an objection is subject to mediation prior to adjudication of the objection." RCW 7.60.220(2).

[33] Per and Melody contend Jay's objections fail to rebut the presumption in RCW 7.60.210(4). The parties dispute whether Jay caused holiday.com not to sell. Jay says it did not sell because it failed to meet minimum bid, but Per and Melody say it was because Jay interfered.

the case" by having to adjudicate unliquidated and potentially complex claims during the receivership. Per and Melody cannot then use this provision to justify prolonging the receivership for a claim that is unrelated to the case being administered. Whether or not the receiver estimates Per and Melody's claim to 25 percent of holiday.com, that claim is unsecured and contested; they would still need discovery and trial to prove it.[34]

Further, the receivership had substantial assets. The trial court could reasonably conclude that ending the receivership would not impair Per and Melody's ability to recover. Per and Melody claimed $1.6 million for 25 percent of holiday.com and assorted other debts. The receivership assets totaled over $34 million when it was terminated. Since a receivership's primary purpose is to protect the debtor's assets for creditors,[35] it has less utility when, as here, the debtor does not appear in danger of becoming insolvent. Had the receivership continued, the receiver would have none of the usual tasks of a receiver, such as managing assets, paying bills, or winding up companies; the receiver would have controlled those assets only while waiting for the parties to resolve an unrelated claim.

---

[34] The trial court and receiver each acknowledged this.
[35] See 65 Am. Jur. 2d Receivers § 182 (2011).

Finally, Per and Melody claim that the trial court's manner of interpretation invites abuse by ignoring serious allegations about Jay's misconduct that prejudice creditors. They contend that when there are serious allegations a debtor has engaged in inequitable and unlawful conduct that affected a receivership, it is improper to "reward" the debtor with dismissal of the case to his benefit and at the expense of creditors. But as discussed above, the receivership's purpose was to ensure satisfaction of Bero's judgment for breach of his settlement agreement with Jay. The receivership was ancillary to Bero's cause of action.[36] Whatever advantages the receivership may offer them, Per and Melody do not explain why the trial court could not reasonably decide that a separate lawsuit would provide a more appropriate setting for their claim.

The trial court here properly exercised its powers over the receiver: the receiver fulfilled the receivership's initial purpose, and the trial court reasonably determined that continuation of the receivership would be wasteful and inefficient. Per and Melody cite no authority that would warrant reversal of a trial court's termination of a receivership because not all creditor claims are resolved. Because the receivership's purpose was satisfied once the Bero judgment was paid in full and Per and Melody's guaranty satisfied, the trial court did not abuse its discretion in terminating it.

---

[36] See Nw. Defs. Ass'n, 118 Wn. App. at 127-28.

-17-

CONCLUSION

Because the trial court had discretion to terminate the receivership and did

not abuse that discretion, we affirm.

_Leach, J._

WE CONCUR:

_Trickey, ACJ_          _Spearman, J._