**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In re the Marriage of: | No. 84010-0-I |
| LARA BROOKE SEEFELDT, | DIVISION ONE |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| ALBERT WHITNEY COBURN, | |
| Appellant. | |

ANDRUS, C.J. — Albert Coburn appeals the trial court's denial of his petition to modify a parenting plan, his motion seeking a finding of custodial interference and contempt against his former wife, Lara Seefeldt, and his request to arbitrate Seefeldt's decision to enroll their child in private school. We conclude the trial court properly concluded that Coburn failed to establish adequate cause to modify the parenting plan under RCW 26.09.260 and properly rejected his motion for contempt and his request to arbitrate. We affirm.

FACTS

Coburn and Lara Seefeldt married on August 18, 2007. In December 2011, their daughter, E.C. was born. In 2015, E.C. was evaluated and diagnosed with autism spectrum disorder. She then began to participate in Applied Behavioral Analysis (ABA) therapy, occupational therapy, and speech therapy.

Citations and pin cites are based on the Westlaw online version of the cited material.

Seefeldt filed for divorce in October 2016. When Coburn filed a motion for a temporary parenting plan, Seefeldt filed a declaration expressing concerns about Coburn's ability to deal with E.C.'s special needs and recounted an incident in which he shoved E.C. in response to her resistance to potty training. Seefeldt testified "I do not believe that his ability to manage his emotions is much better than hers, and I fear that he could, again, lose control and react in ways that would hurt her." Due to E.C.'s limited language skills, Seefeldt was concerned that E.C. would be unable to report if she was hurt or neglected.

The December 2016 temporary parenting plan granted Seefeldt primary residential care of E.C. and sole decision-making authority. The court referred the case to Family Court Services (FCS) for a parenting evaluation. In May 2017, FCS assigned social worker Debra Hunter to investigate any parenting issues.

According to Hunter's report, in July 2017, one of E.C.'s therapists noticed some bruising on E.C. and referred the case to Child Protective Services (CPS). In response, Seefeldt moved to modify the temporary parenting plan, leading the parties to agree to defer the issue of Coburn's visitation to CPS. While the CPS investigation was pending, Coburn agreed to have his sister supervise his residential time with E.C.

The FCS report noted that CPS had investigated allegations of child abuse and then closed the case. Hunter opined that there was insufficient information to support a domestic violence protection order and did not recommend any limitations on Coburn's residential time with E.C. Hunter did recommend that Seefeldt be designated the primary residential parent and that "no corporal

punishment of the child by the parties or any adult responsible for her care" be permitted.

While Hunter did not recommend limitations on Coburn's residential time with E.C., she did express concern that he "seems to approach issues with conflict rather than attempting alternative, more civil and cooperative means to address his involvement with the child and her therapies." Because E.C.'s care requires "chronically stressful" levels of supervision, Hunter recommended that "there be a restriction as to the father for abusive use of conflict that will limit his role in decision-making."

In 2018, Coburn and Seefeldt resolved their disputes, including the terms of a final parenting plan, through mediation. Under the negotiated parenting plan, the parties agreed that E.C. would reside primarily with Seefeldt and reside with Coburn three weekends per month with an additional visit on Wednesdays. The parties further agreed that if "the residential parent is not available to supervise the child for 6 hours or more during his/her residential time, then he/she will offer the other parent first right of refusal." The final parenting plan, approved by the court, did not impose any RCW 26.09.191 restrictions but, by agreement of the parents, granted Seefeldt sole decision-making authority for E.C.'s schooling, nonemergency health care, therapies and after school activities.

After the court entered final orders, Coburn repeatedly filed motions against Seefeldt—including motions for contempt, motions to modify the parenting plan, and a motion to enforce a separate property agreement—motions the trial court found that Coburn had filed for the purpose of harassing Seefeldt. In response to

this adverse finding, Coburn sent a letter to the trial court threatening to go on a hunger strike, protesting the court's refusal to grant him joint custody.

When the COVID-19 pandemic began, E.C.'s school closed to in-person learning from March 2020 to September 2021. Given the nature of her job, Seefeldt was unable to work from home. Because Coburn was able to work from home during the pandemic, he exercised his first right of refusal under the parenting plan and provided daycare to E.C. during Seefeldt's residential time.

E.C. also began participating remotely in ABA therapy with Success Through Education, Play & Support (STEPS). On May 29, 2020, STEPS offered Seefeldt in-person sessions for E.C. with recommended health safeguards in place. Seefeldt decided that E.C. should resume in-person therapy. Because these appointments occurred when Coburn was providing daycare for E.C. pursuant to his first right of refusal under the parenting plan, Seefeldt and Coburn discussed his availability to transport E.C. to these appointments. Coburn accommodated his work schedule to facilitate transporting E.C. to these in-person sessions at STEPS and did so without objection for two weeks.

On June 22, 2020, however, Coburn sent a letter to the Administrative Director of STEPS, Heather Suarez, voicing his opposition to any further in-person treatment. Coburn exchanged numerous e-mails with Suarez and Seefeldt, threatening to get the police and the Attorney General involved.

In response, STEPS terminated E.C.'s in-person sessions. Although Seefeldt informed STEPS that she had sole decision-making authority regarding E.C.'s therapy, STEPS decided it would continue with remote appointments "until

a parent agreement has been met (as this is a parent decision) or until we receive documentation from the court specific to [E.C.] receiving ABA during a pandemic."

Seefeldt moved to confirm her authority to make therapy decisions for E.C., including the decision to allow her to participate in person. On September 25, 2020, the trial court granted Seefeldt's motion, finding that Seefeldt

> has sole decision making authority pursuant to the Final Parenting Plan which authority includes her right to make all health care, therapy, and educational decisions on behalf of the parties' minor child, specifically including the decision regarding whether the child attend therapy appointments in person or remotely. . . .

When E.C.'s school reopened for in-person learning in September 2021, the parents resumed the agreed residential schedule under the parenting plan and E.C. was no longer in Coburn's care during the school day.

On February 22, 2022, Coburn filed a petition to modify the parenting plan to give him joint custody and joint decision-making. He argued that (1) his temporary care of E.C. during school hours during the pandemic constituted a substantial change in circumstances; (2) Seefeldt had accused him of child abuse during the dissolution proceeding in bad faith; and (3) he had only signed the final settlement under duress.

On March 15, 2022, Coburn filed two additional motions. First, he filed a request to arbitrate Seefeldt's decision to re-enroll E.C. at the private school she was attending. Second, he filed a motion seeking a finding that Seefeldt had committed custodial interference and contempt, claiming that Seefeldt's decision to have E.C. attend in-person therapeutic appointments during the weekdays on which he had provided daycare between March 2020 and September 2021 had interfered with his residential time with the child. He claimed that, because

Seefeldt had scheduled E.C.'s therapy sessions on weekdays when he was providing daycare to E.C., his consent was required.

On April 20, 2022, the trial court denied all three motions. The court first denied the motion to modify because

> I do not find, based on the information I have before me, that there has been a substantial change of circumstances since the time the last parenting plan was entered. It is not a voluntary integration and deviation from the existing parenting plan for the mother to follow the right of first refusal.

The court also denied the request for arbitration, concluding that the decision to keep E.C. in the same school for the duration of elementary school did not constitute a new service that required arbitration. Finally, the court denied the motion for custodial interference and contempt, finding that "[s]etting therapeutic appointments during your right of first refusal time was not a violation of the court order." The court found Coburn had filed the custodial interference and contempt motion in bad faith and that his motion constituted intransigence. The court awarded fees to Seefeldt based on these findings. Coburn appeals.

ANALYSIS

A. Dismissal of Petition to Modify the Parenting Plan

Coburn first argues the trial court erroneously concluded that he lacked adequate cause to modify the parenting plan, arguing the court's findings are not supported by the record. We disagree.

The trial court's authority to modify a parenting plan is strictly governed by chapter 26.09 RCW. *In re Marriage of McDevitt*, 181 Wn. App. 765, 769, 326 P.3d 865 (2014). RCW 26.09.260 "establishes a strong presumption against modification and in favor of continuity." *In re Marriage of Cardwell*, 16 Wn. App.

2d 90, 96, 479 P.3d 1188 (2021). A party seeking modification must first produce an affidavit showing adequate cause before the court will permit a full hearing. RCW 26.09.270; *In re Marriage of Zigler*, 154 Wn. App. 803, 809, 226 P.3d 202 (2010). The court may modify a parenting plan only if it finds that

> (1) a substantial change occurred in circumstances as they were previously known to the court, (2) the present arrangement is detrimental to the child's health, (3) modification is in the child's best interest, and (4) the change will be more helpful than harmful to the child.

*Id*. at 809 (citing RCW 26.09.260(1), (2)(c)).

At a minimum, adequate cause means "evidence sufficient to support a finding on each fact that the movant must prove in order to modify." *In re Marriage of Lemke*, 120 Wn. App. 536, 540, 85 P.3d 966 (2004). The primary purpose for the threshold adequate cause requirement is to prevent movants from harassing nonmovants by obtaining a useless hearing. *In re Marriage of Adler*, 131 Wn. App. 717, 724, 129 P.3d 293 (2006).

We review a trial court's order on modification of a parenting plan for an abuse of discretion. *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). A trial court abuses its discretion if the decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

The trial court dismissed Coburn's petition to modify the parenting plan after it found that Coburn's increased care of E.C. during the COVID-19 pandemic and Seefeldt's compliance with the first right of refusal provision of the parenting plan did "not constitute a substantial change in circumstances such that modification of

the residential schedule, decision-making and dispute resolution provisions is warranted." The trial court found that

> The father's claims that in 2017 the mother and her family made false claims of abuse which amounted to child abuse, are not supported by prima facie evidence. Rather, the record reflects that the mother legitimately and in good faith raised concerns about possible abuse of the child, who was non-verbal and unable to accurately report events at the time. While the raising of those claims resulted in the temporary suspension of the father's time, that suspension was limited in scope and there is no evidence that the mother has denied the father residential time since entry of the final parenting plan . . . . The father has not presented any evidence that the mother or her family member witnesses intentionally made false reports, just that CPS and Family Court Services ultimately determined the concerns about child abuse to be unfounded.

The court further found that modification of the decision-making provision of the parenting plan "would be contrary to [E.C.]'s best interests."

The record supports these findings. Coburn argues that his ability to take care of E.C. during the COVID-19 pandemic somehow demonstrates that Seefeldt's earlier concerns about child abuse were lodged in bad faith and that this alleged bad faith is adequate cause to modify the parenting plan. We disagree. The trial court found that Seefeldt had legitimate concerns about his ability to care for E.C. and that she raised these concerns in good faith. This finding is supported by Seefeldt's declarations, in which she explained the specific behaviors that caused her concern. It is further supported by the FCS report, which expressed concerns about Coburn's parenting behaviors.

Similarly, Coburn does not explain how modifying the parenting plan would be in E.C.'s best interests. The record supports the conclusion that E.C., an autistic child, requires stability and consistency. The record also contains substantial evidence that Coburn's behavior—including his aggressive and

accusatory style of communication—has created issues with E.C.'s therapy providers and creates a risk that E.C. will not receive the services she needs. In fact, after Coburn repeatedly used the legal system to harass Seefeldt, the trial court modified the dispute resolution provision of the final parenting plan, suspending the requirement that the parties mediate their disputes and instead ordered them to bring all disputes to the court. Coburn does not explain how granting joint decision making would provide any measure of stability or consistency to E.C.

The trial court did not abuse its discretion in denying Coburn's motion to modify because Coburn failed to demonstrate even one element required under RCW 26.09.260. The trial court properly dismissed Coburn's petition to modify the parenting plan.

B. Denial of the Motion for Custodial Interference and Contempt

Coburn next argues that the trial court erroneously concluded that the time he spent with E.C. under the parenting plan's first right of refusal clause was not his "residential time." We again disagree.

The courts have the inherent power to interpret and enforce their own orders. *Bero v. Name Intelligence, Inc.,* 195 Wn. App. 170, 179, 381 P.3d 71 (2016) (citing *Allen v. Am. Land Research*, 95 Wn.2d 841, 852, 631 P.2d 930 (1981)). RCW 26.09.184(7) provides that "[f]ailure to comply with a provision in a parenting plan . . . may result in a finding of contempt of court, under RCW 26.09.160." We review a trial court's decision on contempt for an abuse of discretion. *In re Marriage of James*, 79 Wn. App. 436, 439-40, 903 P.2d 470

(1995). Discretion is abused if the court's exercise of discretion was based on untenable grounds or untenable reasons. *Id.* at 440.

Coburn argued below that Seefeldt's decision to have E.C. attend ABA therapy in person on a weekday violated the parenting plan provision that "The mother shall not schedule appointments for the child on father's residential time without his agreement." The trial court disagreed, finding that this provision did not apply to those periods when Coburn was exercising his first right of refusal to provide weekday daycare for E.C. because Seefeldt had the authority to schedule E.C.'s therapy during her residential time.

We see no abuse of discretion in the trial court's interpretation of the agreed parenting plan. The parenting plan provides that Coburn has residential time with E.C. on the first, third, and fourth weekend of each month, as well as for four hours every Wednesday. The plan further allows that "[i]f the residential parent is not available to supervise the child for 6 hours or more during his/her residential time, then he/she will offer the other parent first right of refusal to care for the child." There was no agreement, however, that providing daycare for the child would be deemed residential time for the parent who exercised the daycare right of first refusal. The parenting plan prevented Seefeldt from scheduling therapeutic appointments for E.C. during Coburn's weekend or Wednesday residential time. The time Coburn spends with E.C. on weekdays under the first right of refusal provision falls outside his residential time, and Seefeldt's scheduling of appointments during her own residential time did not violate the parenting plan.

Moreover, the parents fully litigated the issue of Seefeldt's authority to schedule E.C.'s in-person therapy sessions in 2020 when the court confirmed that

she had sole decision-making authority on this issue. Coburn fails to explain how Seefeldt's conduct could possibly be contempt where she had an order from the court explicitly clarifying that she had authority to do exactly what she was doing. The trial court did not abuse its discretion in finding that Seefeldt was not in contempt of the parenting plan by scheduling E.C.'s in-person therapy sessions to occur on weekdays.[1]

C. Denial of Request to Arbitrate

Finally, Coburn challenges the court's denial of his request to arbitrate E.C.'s enrollment in private school for the 2022-23 school year.

Under the final parenting plan, "[a]ny new medical or educational services or work related daycare provided to the child which would require financial contribution in excess of $500 or $100 per month by the father will be subject to arbitration if the father gives written notice of objection within 1 week of receiving notice." The trial court concluded Coburn was not entitled to arbitrate whether E.C. would remain in private school for the 2022-23 school year because "[c]ontinuing at the same school for the balance of elementary school does not constitute 'new medical or education services' such that it is subject to arbitration."

Coburn does not argue that the trial court abused its discretion or otherwise erred in so ruling. Instead, he seems to argue the court's ruling should be reversed because he has been forced to sign a liability release for the private school E.C.

---

[1] Coburn further argued below that Seefeldt's conduct amounted to custodial interference. It appears that he argued that Seefeldt violated RCW 9A.40.060(2), under which a parent is guilty of custodial interference in the first degree if the parent retains the child with the intent to deny access from the other parent having the lawful right to time with the child pursuant to a court order and either intends to hold the child permanently or for a protracted period or exposes the child to substantial risk of illness or injury. Coburn, however, makes no argument on appeal as to how Seefeldt's conduct violates this statute, especially in light of the September 25, 2020 order.

attends. Coburn concedes, however, that he did not raise this issue before the trial court, claiming he learned of the release requirement only after the trial court entered its order. As the record before the trial court lacks any reference to any release, we decline to address any issue not raised below. *See* RAP 2.5(a) (appellate court may refuse to review "any claim of error which was not raised in the trial court").

D. Attorney Fees

Seefeldt requests attorney fees on appeal, relying on RAP 18.1(a) and RAP 18.9. RAP 18.1 permits a party to request an award of reasonable attorney fees on appeal if a party is entitled to them under applicable law. Under RCW 26.09.140, this court may, "in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs."

Alternatively, a court may award attorney fees where a party files a frivolous appeal or is intransigent. RAP 18.9(a). We can award attorney fees to one party based on the other party's intransigence. *In re E.J.S.,* 16 Wn. App. 2d 776, 785-86, 483 P.3d 110 (2021). "Where an intransigent spouse's appeal 'amounts to little more than an effort to carry on with the same efforts which caused [them] to lose credibility with the trial court,' the appellate court may award attorney fees based on intransigence." *In re Marrige of Bresnahan*, 21 Wn. App. 2d 385, 413, 505 P.3d 1218 (2022) (quoting *In re Marriage of Sievers*, 78 Wn. App. 287, 312, 897 P.2d 388 (1995)).

Here, the trial court found that Coburn's motion regarding custodial inference and contempt was brought in bad faith and amounted to intransigence.

Because this appeal is a continuation of the intransigence he demonstrated below, we award reasonable attorney fees on appeal.[2]

We affirm.[3]

Andrus, C.J.

WE CONCUR:

Birk, J.

---

[2] In support of her request for fees, Seefeldt filed a declaration establishing her financial need. Coburn objected to this declaration, raising many of the same factual issues he raised on appeal and arguing that Seefeldt has misrepresented her financial situation. Because we are awarding fees on the basis of Coburn's intransigence and not on Seefeldt's financial need, we need not resolve Coburn's objection.

[3] In his reply brief, Coburn raises a number of new issues, including that the State had a duty to investigate the child abuse allegations and that he was denied evidence in violation of his Sixth Amendment rights. We will not review an issue raised and argued for the first time in a reply brief. *Bergerson v. Zurbano*, 6 Wn. App. 2d 912, 926, 432 P.3d 850 (2018); RAP 10.3(c). He further argues that this court unconstitutionally hindered his appeal when a commissioner of this court struck his initial reply brief containing records and exhibits not before the trial court and not properly designated to this court. We reject this argument. The commissioner properly concluded that Coburn's reply violated RAP 10.3(a)(8) and RAP 10.4(c) and Coburn has not demonstrated how enforcement of these rules constitutes a constitutional violation.