IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Receivership of<br><br>NORTHWEST TRUSTEE SERVICES, INC. and RCO LEGAL, P.S.<br><br>ELLIOT BAY ASSET SOLUTIONS, LLC,<br><br>        Appellant/Cross Respondent,<br><br>        v.<br><br>PNC BANK, N.A.,<br><br>        Respondent/Cross Appellant. | No. 86766-1-I<br><br><br><br>UNPUBLISHED OPINION |

BOWMAN, A.C.J. — Elliott Bay Asset Solutions LLC (EBAS) served as the general receiver for RCO Legal PS and its affiliate, Northwest Trustee Services Inc. (NWTS). EBAS hired attorneys to help with its receivership duties, including defending against a claim for payment by PNC Bank NA. EBAS appeals from the trial court's orders disqualifying its attorneys from defending against PNC's claim and refusing to authorize EBAS to compensate them for work performed in January and February 2024. PNC cross appeals, arguing the court abused its discretion by approving payment to EBAS' attorneys for work done in May, June, and July 2024. Because the attorneys had no conflict of interest preventing them from defending against PNC's claim, we reverse and remand for the trial court to

authorize payment for work that EBAS and its professionals performed in January and February 2024 and to vacate its order disqualifying them. We also affirm the trial court's subsequent order granting EBAS' requests to compensate its attorneys.

FACTS

RCO and NWTS were a collective law firm and trust company that represented financial institutions and foreclosed on over 49,000 properties per year. In October 2015, JPMorgan Chase & Co. and JPMorgan Chase Bank NA (collectively Chase) initiated an arbitration proceeding against RCO for damages incurred during nonjudicial property foreclosures in Hawaii. Chase alleged that RCO breached its contractual obligations and committed professional malpractice. RCO's malpractice insurer, Catlin Specialty Insurance Company, defended RCO in the arbitration subject to a reservation of rights.[1] On November 29, 2017, RCO, Chase, and Catlin reached a tentative settlement agreement.

On March 27, 2018, RCO and NWTS could not pay their debts and assigned their property to EBAS to benefit the creditors under RCW 7.08.030. EBAS accepted the assignment. The same day, EBAS petitioned for appointment as general receiver "over all the assets owned by NWTS and/or RCO." The next day on March 28, the trial court issued an "Order Appointing

---

[1] RCO's Catlin policy covered the period of July 1, 2013 to July 1, 2024. It was an eroding policy with a $5,000,000 per claim limit of liability, a $5,000,000 aggregate limit of liability, and a $50,000 retention applicable to each covered claim.

2

General Receiver" (Appointment Order), appointing EBAS as the general receiver for RCO and NWTS.

The Appointment Order authorized EBAS to "take charge over all the assets and property owned by NWTS and RCO . . . and to take such actions as are required to protect and preserve such property." It also authorized EBAS to

> contract with, hire or retain (including on a contingency fee basis), direct and discharge any professional persons, including attorneys and accountants, that the Receiver, in its sole discretion, deems necessary for the efficient collection, operation, maintenance, and/or liquidation of the Receivership Property in accordance with RCW . . . 7.60.180.

Section 16 of the Appointment Order explained that EBAS may "disburse funds from the Receivership Estate as payment for its fees and costs and for the fees and costs of its professionals on a periodic basis" after filing a compensation notice. It said the "approved fees and costs of the Receiver and its professionals shall be paid from the gross receipts derived from the Receivership Property."

On May 29, 2018, PNC filed a secured proof of claim with EBAS, seeking over $30 million. Like the Chase claim, PNC alleged that RCO and NWTS breached a legal services agreement and committed professional negligence related to nonjudicial foreclosure proceedings in Hawaii. EBAS submitted the claim to Catlin, which accepted it subject to a reservation of rights.

On May 30, 2018, Chase filed a proof of claim with EBAS. Two years later in April 2020, EBAS moved the trial court to approve the settlement agreement with Chase. The settlement agreement required Catlin to pay Chase $2,500,000 on behalf of RCO and NWTS. In exchange, Chase would withdraw its proof of claim and dismiss the arbitration with prejudice. PNC opposed EBAS'

3

motion to approve the settlement agreement. It argued that if the court considers the proceeds of the Catlin insurance policy to be property of the receivership estate, the settlement agreement improperly grants Chase's unsecured claim priority over other creditors' claims like PNC's. On September 1, the trial court approved the settlement agreement. It found that "the proceeds of the Catlin Policy payable directly to Chase are not assets of the Receivership Estate . . . and are not subject to pro rata distribution to other receivership creditors."

On January 28, 2021, EBAS moved to employ the law firm Beck Chase Gilman PLLC (BCG) and its attorneys James Beck and Eric Gilman to assist it with its receivership duties. EBAS told the court it "does not believe that [BCG] and/or its attorneys . . . have a conflict of interest with the Receiver or the Receivership Estate." On February 24, the trial court granted the motion.

Almost two years later on November 2, 2022, EBAS informed PNC that its May 2018 proof of claim was statutorily noncompliant because it did not include "a copy of the contract" supporting its claim for over $30 million. On December 6, PNC amended its proof of claim, reducing it to $7,812,287 and identifying it as an unsecured claim.

On February 13, 2023, EBAS moved to employ the law firm Wenokur Riordan PLLC (WR) and its attorney Alan Wenokur "to advise and assist [EBAS] with respect to administration of the Receivership Estate, including . . . the PNC . . . Proof of Claim." EBAS said it was hiring WR as "additional" counsel "to investigate the PNC Bank Proof of Claim to determine liability and defend the Proof of Claim if needed." It stated, "Neither [WR] nor its attorney . . . have a

4

conflict of interest with the Receiver or the receivership estate." The court granted the motion.

On October 18, 2023, WR sent PNC a letter, stating that it was aware PNC was trying to identify insurance policies other than Catlin to which EBAS could submit PNC's claim. But it disputed that PNC's claims have merit because "all the legal actions where [PNC] alleged that RCO Legal committed professional negligence fall far outside [the] statutes of limitations." WR told PNC that "unless we can settle these matters very soon, [EBAS] will be filing an objection to the PNC claim."

On November 15, 2023, PNC stated in a letter to EBAS that it discovered additional RCO malpractice insurance policies. It said, "We are advised that Chubb was RCO's insurer from July 1, 2009 to June 30, 2011 and [that] Zurich was RCO's insurer from July 1[,] 2011 to June 30, 2013." PNC asked EBAS to tender its claim to Chubb and Zurich. EBAS refused.

On February 15, 2024, EBAS filed a "Notice of Intent to Compensate Professionals" (NOICP) under RCW 7.60.180(4). The notice explained that EBAS planned to pay itself and its attorneys for work performed in January 2024. It stated that BCG incurred legal fees and costs of $19,330 and that Fox Rothschild LLP (FR) incurred legal fees and costs of $272. On February 26, PNC objected to the NOICP.[2] It contended that EBAS "could have taken steps to resolve PNC's proof of claim by tendering it to applicable insurance for defense

---

[2] This was the first time that PNC objected to an NOICP. EBAS had been filing NOICPs unopposed for several months.

and indemnity." And by failing to do so, EBAS is "continuing to incur attorney's fees and costs for unnecessary and duplicative work serving no legitimate receivership purpose."

On February 27, 2024, PNC moved for an order authorizing it to file an adjunct complaint to "(1) establish the validity of PNC's claims of liability against RCO; and (2) compel [EBAS] to tender said liability claims to *all* of RCO's applicable insurance." On March 8, EBAS objected to PNC's amended claim, arguing PNC "is not entitled to any distribution from this receivership estate." On March 11, EBAS opposed PNC's motion to file an adjunct complaint, arguing that it is unsupported by the law, that it does not appear meritorious because the statute of limitations bars the professional negligence claims, and that EBAS reasonably exercised its business judgment in opposing PNC's claim.

On March 15, 2024, the trial court entered an order authorizing PNC to file an adjunct complaint. The same day, the court denied EBAS' request to pay EBAS, BCG, and FR[3] for work performed in January 2024. On March 25, EBAS moved the trial court to reconsider both its order authorizing PNC to file an adjunct complaint and its order denying EBAS' request to pay its attorneys for work performed in January 2024. The court denied EBAS' motion for reconsideration.

On March 22, 2024, EBAS filed an NOICP for time that it, BCG, and WR spent working, in part, on PNC's claim in February 2024. The NOICP stated that

---

[3] It does not appear from the briefing that FR's compensation is at issue in this appeal.

BCG incurred legal fees and costs of $14,059 and that WR incurred legal fees and costs of $2,915. Again, PNC objected, arguing EBAS was incurring attorney fees and costs for unnecessary work that serves no receivership purpose. PNC also argued that EBAS failed to disclose that the fees "relating to PNC's claim are being paid out of the remaining proceeds from the [Catlin policy]." And it asserted that "[b]y allowing its attorneys to incur and be paid fees that erode the Catlin Policy at the expense of PNC, [EBAS] . . . has without court approval created clear conflicts of interest which are just now being disclosed."

On April 19, 2024, EBAS moved under RCW 7.60.060(1)(g) to seek and obtain advice or instruction on how it "should pay its fees and costs and its legal counsel's fees and costs to process the PNC Bank claim and to otherwise litigate the adjunct cause of action authorized by the Court." It explained that it made the request because the court "has authorized [it] to retain legal counsel and has authorized the filing of an adjunct cause of action against [EBAS], yet has denied [EBAS] counsel's request for compensation to address the adjunct cause of action."

On May 3, 2024, the trial court denied EBAS' RCW 7.60.060(1)(g) motion. It agreed with PNC's argument that EBAS' attorneys were conflicted. And it instructed EBAS to hire new counsel that represented only EBAS and had no affiliation with Catlin's insured. The court ordered EBAS to

> obtain approval (upon notice to all creditors of this above-captioned receivership case) of the employment of special insurance defense counsel retained by the insurers for the specified special purpose of only defending RCO Legal, P.S. in the adjunct case proceeding under King County Superior Court No. 24-2-06322-6 SEA and said

7

special insurance defense counsel *shall not* advise [EBAS] on any other receivership matters.

On May 7, 2024, the trial court requested supplemental briefing on PNC's objection to EBAS' request to pay its attorneys for work performed in February 2024. It asked the parties to address "what, **if any**, impact the Court's Order [denying advice or instruction under RCW 7.60.060(1)(g)] has on the matter." After considering the supplemental briefing, the court overruled PNC's objection to the NOICP and authorized EBAS to issue payment for work performed in February 2024.

On May 23, 2024, PNC moved for reconsideration, arguing that EBAS "now stands to further erode the Catlin Policy's remaining proceeds[,]" which "directly prejudices PNC who has a valid claim to the proceeds." On June 12, the court granted PNC's motion for reconsideration and denied EBAS' request to compensate. It recognized that its order authorizing payment for work performed in February 2024 contradicted its order refusing payment for work performed in January 2024, "since no material facts or evidence has changed." It also stated that EBAS

> improperly disclosed and never obtained this Court's approval and authorization to allow [EBAS'] two general counsel attorneys, Beck and Wenokur, to simultaneously serve as [EBAS'] general counsel and as paid insurance defense counsel for Catlin in defending the Amended Proof of Claim asserted by PNC.

Further, the court stated that EBAS never received approval to have its attorneys be paid "from the remaining proceeds of the Catlin policy."

On August 6, 2024, EBAS filed an NOICP for work that it, BCG, WR, and Carney Badley Spellman performed in May, June, and July 2024 related to

8

PNC's claim. PNC objected and the court overruled its objection, authorizing payment of legal fees and costs.

EBAS appealed the trial court's order refusing to authorize compensation for work that its attorneys performed in January and February 2024, as well as the court's order disqualifying its attorneys from defending against PNC's claim.[4] PNC cross appealed, arguing the trial court erred by authorizing payment for work performed from May through July 2024.

On December 13, 2024, the parties stipulated that pending our decision, EBAS may continue to submit NOICPs and "issue payment from the bank accounts held by the receivership estate for any Fee Notices that are approved by the Court or deemed approved pursuant to the Appointment Order." They also stipulated that

> neither the Receiver nor its counsel will request to be compensated, reimbursed, or otherwise paid from the proceeds of any insurance policies that do or may provide coverage for defense costs or claim expenses to the Estate or indemnity coverage to RCO Legal, P.S. or any of its affiliates.

And they agreed that "PNC will not object to future Fee Notices based on the source from which approved compensation is paid, so long as payment is made from the Estate's bank accounts and not from the proceeds of any Insurance Policies."

---

[4] EBAS first filed a notice of appeal on May 10, 2024. On June 24, it amended its appeal to include additional orders.

ANALYSIS

EBAS argues the trial court erred by disqualifying its attorneys from defending against PNC's claim and denying them compensation for work performed in January and February 2024.  PNC argues the trial court's orders are not appealable and, regardless, it did not err by disqualifying EBAS' attorneys or denying them compensation.  PNC also cross appeals, challenging the trial court's order authorizing EBAS to compensate its attorneys for work performed from May through July 2024.  We address each argument in turn.[5]

1.  Appealability

As an initial matter, PNC argues the trial court's orders denying compensation and instructing EBAS to retain new counsel are not appealable.[6] EBAS contends the orders are reviewable under RAP 2.2(a)(3) and 2.3(b).  We agree with EBAS that the orders are reviewable under RAP 2.3(b)(2).

Under RAP 2.3(b)(2), we may accept discretionary review when the trial court "has committed probable error and the decision of the superior court substantially alters the status quo or substantially limits the freedom of a party to act."  Here, the trial court granted EBAS' motions to employ BCG and WR but then disqualified them from defending EBAS against PNC's claims.  As explained below, substantial evidence does not support their disqualification.  And the trial

---

[5] EBAS moved to strike the overlength portion of PNC's response brief and to strike PNC's reply brief for violating RAP 10.1(c) and 10.3(c).  We deny both motions. PNC moved for leave to file an overlength brief, which a commissioner of this court deferred to the panel.  We now grant that motion.

[6] A commissioner of this court deferred the appealability issue to the panel.

court's error substantially limited EBAS' ability to defend against PNC's claim. As a result, we grant discretionary review under RAP 2.3(b)(2).[7]

2. Orders Denying Compensation

EBAS argues the trial court abused its discretion by disqualifying its attorneys and denying them compensation for time incurred in January and February 2024. PNC disagrees and cross appeals, arguing the court erred by granting compensation for time incurred in May, June, and July 2024. We agree with EBAS.

We review the trial court's rulings related to a receivership for abuse of discretion. *In re Receivership of Applied Restoration, Inc.*, 28 Wn. App. 2d 881, 890-91, 539 P.3d 837 (2023). A court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Id.* at 891. We review the court's findings of fact for substantial evidence, which exists when there is sufficient evidence in the record " 'to persuade a reasonable person that the declared premise is true.' " *Id.* (quoting *Wenatchee Sportsmen Ass'n v. Chelan County,* 141 Wn.2d 169, 176, 4 P.3d 123 (2000)).

Chapter 7.60 RCW provides the trial court broad discretion over receiverships. *Bero v. Name Intel., Inc.*, 195 Wn. App. 170, 175, 381 P.3d 71 (2016). A trial court appoints a receiver "as the court's agent, and subject to the court's direction, to take possession of, manage, or dispose of property." RCW

---

[7] PNC argues we should dismiss EBAS' appeal because it did not first obtain the trial court's permission to appeal. But PNC cites no Washington authority requiring EBAS to get the court's approval to appeal a denial of a request to compensate. *See* RAP 10.3(a)(6) (brief "should contain . . . argument in support of the issues presented for review, together with citations to legal authority"). So, we reject that argument.

7.60.005(10). A general receiver's broad powers include managing the receivership property, liquidating assets, and satisfying creditors. *Bero*, 195 Wn. App. at 175. With the court's approval, the receiver may employ attorneys "that do not hold or represent an interest adverse to the estate to represent or assist the receiver in carrying out the receiver's duties." RCW 7.60.180(1). A person is not disqualified for employment

> solely because of the person's employment by, representation of, or other relationship with a creditor or other party in interest, if the relationship is disclosed in the application for the person's employment and if the court determines that there is no actual conflict of interest or inappropriate appearance of a conflict.

RCW 7.60.180(2).

RCW 7.60.180(4) provides that a receiver may pay its employed professionals by filing an itemized billing statement showing the time spent, billing rates, and a detailed list of expenses for compensation and by serving copies on any parties. If no one objects, the receiver may make the payments specified in the notice. *Id.* Similarly, section 16 of the Appointment Order states that the receiver "is authorized to disburse funds from the Receivership Estate as payment for its fees and costs and for the fees and costs of its professionals on a periodic basis." And it specifies that the "approved fees and costs . . . shall be paid from the gross receipts derived from the Receivership Property."

Here, the trial court refused to authorize EBAS to pay its attorneys at BCG and WR for their work in January and February 2024. It reasoned, in part, that Catlin's reimbursement of attorney fees for work defending against PNC's claim created a conflict of interest. It explained that BCG and WR could not

"simultaneously serve as the Receiver's general counsel and as paid insurance defense counsel for Catlin in defending the Amended Proof of Claim asserted by PNC."[8] But the court misconstrued BCG and WR's role as independent counsel under Washington insurance law.

Catlin accepted EBAS' claim for coverage against PNC's allegations under a reservation of rights, meaning Catlin agreed to defend EBAS subject to the right to later deny coverage. *See Ledcor Indus. (USA), Inc. v. Mut. of Enumclaw Ins. Co.*, 150 Wn. App. 1, 7, 9, 10-11, 206 P.3d 1255 (2009) (under a reservation of rights defense, the insured receives the defense promised, but if the insurer later determines there is no coverage, it need not pay). In a reservation-of-rights defense, an insurance company has an enhanced obligation to its insured, which includes "retain[ing] competent defense counsel for the insured." *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 387-88, 715 P.2d 1133 (1986). Defense counsel "represents only the *insured*, not the [insurance] company." *Id.* at 388. As a result, they are "loyal only to the insured." *Ledcor*, 150 Wn. App. at 9; *see also* RPC 5.4(c).

Catlin's decision to accept EBAS' claim for coverage under a reservation of rights compelled it to retain independent counsel for EBAS. EBAS chose BCG and WR as their independent counsel. And while Catlin was contractually

---

[8] The trial court also found that EBAS violated its obligation to disclose and obtain approval to "seek reimbursement for the fees and costs incurred . . . from the remaining proceeds of the Catlin Policy." But EBAS had no duty to disclose reimbursement under RCW 7.60.180 or the Appointment Order. And EBAS otherwise followed the procedural requirements of RCW 7.60.180 and the Appointment Order—it timely submitted the NOICPs, supported by itemized billing statements, and paid the fees from the receivership assets.

obliged to reimburse EBAS for the attorney fees, BCG and WR represented only EBAS under Washington law. The attorneys owed no duty of loyalty to Catlin. So, the trial court erred by concluding that Catlin's reimbursement made BCG and WR "paid insurance defense counsel for Catlin," creating a conflict of interest.

PNC argues this case is like *Lowder v. All Star Mills, Inc.*, 309 N.C. 695, 309 S.E.2d 193 (1983). In that case, minority shareholders sued a corporation, alleging that a corporate officer diverted assets. *Id.* at 696. The shareholders' attorneys agreed to prosecute the case on a contingency basis. *Id.* at 700. The court then appointed those same attorneys to serve as counsel for the corporation's receiver. *Id.* at 699-700. The court of appeals held that the attorneys' appointment created a conflict of interest and that the trial court could not compensate the attorneys for fees related to services for the receiver. *See id.* at 698. The North Carolina Supreme Court agreed that the appointment created a conflict of interest because the attorneys' personal interests in a successful lawsuit substantially conflicted with their loyalty to the receiver. *Id.* at 702-03.

This case is not like *Lowder*. Here, BCG and WR's duty of loyalty was solely to EBAS. Neither BCG nor WR stood to personally gain from PNC's claim. So, they had no conflict of interest.

Still, PNC argues that Catlin's reimbursement of EBAS' attorney fees creates a conflict of interest because "[e]very dollar that Catlin paid EBAS eroded the policy limit further, leaving a dollar less to pay PNC's claim." But PNC fails to

14

explain how BCG and WR vigorously defending against its claim at the expense of eroding policy limits amounts to a conflict of interest. Indeed, EBAS has a duty to protect and preserve estate property,[9] which includes contesting unsupported claims. *See* RCW 7.60.060. And because BCG and WR are loyal to only EBAS, they must advocate consistently with that duty.

The trial court abused its discretion by disqualifying EBAS' attorneys from defending against PNC's claim and refusing to authorize compensation for work the attorneys performed in January and February 2024.[10] We reverse and remand for the trial court to authorize payment for those services and to vacate its order instructing EBAS to hire new counsel. And we affirm the order granting EBAS' requests to compensate its attorneys for work performed from May through July 2024.

, ACJ

WE CONCUR:

---

[9] As much as PNC suggests that the Catlin policy proceeds are estate property, it is mistaken. The trial court determined that the proceeds were not estate property in its 2020 order approving EBAS' settlement agreement with Chase.

[10] For the same reasons, the court did not err by authorizing payment to EBAS and its attorneys for the work they performed from May through July 2024.